**24-7032, 24-7037, 24-7300, 24-7304, 24-7312, 24-7265**

IN THE

# United States Court of Appeals

### FOR THE NINTH CIRCUIT

◆◆

PEOPLE OF THE STATE OF CALIFORNIA; *et al.*,

*Plaintiffs-Appellees,*

—and—

STATE OF NORTH DAKOTA, and STATE OF GEORGIA,

*Plaintiffs,*

—v.—

META PLATFORMS, INC.; *et al.*,

*Defendants-Appellants.*

and Consolidated Cases

―――――

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION
HON. YVONNE GONZALEZ ROGERS, DISTRICT JUDGE
CASE NO. 4:23-CV-05448 (MDL NO. 3047)
CASE NO. 4:22-MD-03047 (MDL NO. 3047)

## BRIEF FOR META DEFENDANTS-APPELLANTS

PAUL W. SCHMIDT
  (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
pschmidt@cov.com

JAMES P. ROUHANDEH
  (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
rouhandeh@davispolk.com

*Attorneys for Defendants-Appellants*
*Meta Platforms, Inc. f/k/a Facebook, Inc.; Meta Payments Inc.;*
*Meta Platforms Technologies, LLC f/k/a Facebook Technologies, LLC;*
*Facebook Holdings, LLC; Facebook Operations, LLC;*
*Facebook Payments, Inc.; Instagram, LLC; and Siculus, Inc.*

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendants-Appellants Meta Platforms, Inc. f/k/a Facebook, Inc.; Meta Payments Inc.; Meta Platforms Technologies, LLC f/k/a Facebook Technologies, LLC; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Instagram, LLC; and Siculus, Inc. (the "Meta Defendants") state: Meta Platforms, Inc. is a publicly traded corporation with no parent corporation and, to its knowledge, no publicly held corporation owns ten percent (10%) or more of its stock as of its most recent Proxy Statement; and Meta Payments Inc., Meta Platforms Technologies, LLC, Facebook Holdings, LLC, Facebook Operations, LLC, Facebook Payments, Inc., Instagram, LLC, and Siculus, Inc. are each a wholly owned subsidiary of Meta Platforms, Inc.

Dated: March 31, 2025

Respectfully submitted,

*/s/ James P. Rouhandeh*
James P. Rouhandeh (*pro hac vice*)
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Email: rouhandeh@davispolk.com

Paul W. Schmidt (*pro hac vice*)
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Email: pschmidt@cov.com

*Attorneys for Defendants-Appellants Meta Platforms, Inc. f/k/a Facebook, Inc.; Meta Payments Inc.; Meta Platforms Technologies, LLC f/k/a Facebook Technologies, LLC; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Instagram, LLC; and Siculus, Inc.*

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellants submit that oral argument would assist the Court in evaluating this appeal.

Dated: March 31, 2025

Respectfully submitted,

/s/  James P. Rouhandeh

James P. Rouhandeh (*pro hac vice*)
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Email: rouhandeh@davispolk.com

Paul W. Schmidt (*pro hac vice*)
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Email: pschmidt@cov.com

*Attorneys for Defendants-Appellants Meta Platforms, Inc. f/k/a Facebook, Inc.; Meta Payments Inc.; Meta Platforms Technologies, LLC f/k/a Facebook Technologies, LLC; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Instagram, LLC; and Siculus, Inc.*

## TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ................................................................... i

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF AUTHORITIES ................................................................ vii

INTRODUCTION ............................................................................... 1

JURISDICTIONAL STATEMENT ........................................................... 4

ISSUE PRESENTED ............................................................................ 5

STATEMENT OF THE CASE ................................................................. 6

    A.    Meta's Social Media Platforms ................................................. 6

    B.    Plaintiffs' Complaints ............................................................ 7

    C.    Defendants' Motions to Dismiss the Complaints ................................. 8

        1.    Personal Injury Plaintiffs' Priority Claims ................................. 8

        2.    State Attorneys General and Certain of Personal Injury Plaintiffs' Non-Priority Claims .............................................. 10

        3.    School Districts and Local Government Entities' Claims ........ 11

    D.    The District Court's Motion to Dismiss Orders .................................. 11

        1.    Personal Injury Plaintiffs' Priority Claims Order (November 14, 2023) ................................................................ 11

        2.    Multistate AGs Order (October 15, 2024) ................................. 13

        3.    School District and Local Government Entities Order (October 24, 2024) ................................................................ 14

    E.    Meta's Appeal ................................................................... 15

SUMMARY OF THE ARGUMENT ....................................................16

STANDARD OF REVIEW ................................................................19

ARGUMENT ..................................................................................19

I.    The District Court Erred by Forcing Meta to Litigate Failure to Warn Claims for Which It Is Immune from Suit Under Section 230 ....................20

    A.    The District Court Correctly Held That Claims Relating to the Platform Features at Issue Treat Meta As a Publisher of Third-Party Content .....................................................................................21

    B.    The District Court Erred by Not Dismissing Plaintiffs' Failure to Warn Claims Relating to Platform Features Protected by Section 230 ...........................................................................................25

        1.    Section 230 Confers Broad Immunity from Suit.....................26

            a.    The Plain Text of Section 230 Provides for Immunity from Suit ........................................................................27

            b.    This Court's Binding Precedent and Decisions of Other Courts Confirm That Section 230 Provides for Immunity from Suit ........................................................29

        2.    The District Court Erred by Allowing Plaintiffs to Plead Around Section 230 Immunity from Suit .................................33

II.    This Court's Section 230 Precedent Requires Dismissal of the Failure to Warn Claims ...............................................................................36

    A.    Plaintiffs' Failure to Warn Claims Seek to Treat Meta As a Publisher of Third-Party Content .........................................................36

    B.    This Court Has Consistently and Recently Held That Failure to Warn Claims Like Plaintiffs' Are Barred by Section 230 .................40

        1.    Dismissal Is Required Because the Claims Seek to Hold Meta Liable for Harm Allegedly Arising from the Means by Which It Makes Third-Party Content Available to Users ........41

2.    Dismissal Is Also Required Because the Claims Seek to Hold Meta Liable for a General Possibility of Harm That Exists Everywhere on the Internet .......................................................45

C.    The Decision Whether to Warn About Third-Party Content Is Also Itself a Form of Publishing Activity....................................................46

CONCLUSION .......................................................................................................49

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

Page(s)

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ..................... 18, 21, 22, 23, 24, 29, 33, 35, 36-37

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ...................................................... 5, 31

*Bill v. Superior Court*,
137 Cal. App. 3d 1002 (1982) ............................................................ 47

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) ............................................................ 38

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ................................................. 26, 28, 30, 31, 32

*Diep v. Apple, Inc.*,
No. 21-cv-10063-PJH, 2022 WL 4021776 (N.D. Cal. Sept. 2, 2022) ........ 44-45

*Discount Tobacco City & Lottery, Inc. v. United States*,
674 F.3d 509 (6th Cir. 2012) ............................................................ 48

*Doe (K.B.) v. Backpage.com, LLC*,
No. 23-cv-02387-RFL, 2025 WL 719080 (N.D. Cal. Mar. 3, 2025) .... 23, 40, 44

*Doe v. Grindr Inc.*,
128 F.4th 1148 (9th Cir. 2025) ............................................. 2, 18, 38, 42, 43, 46

*Doe v. Grindr Inc.*,
709 F. Supp. 3d 1047 (C.D. Cal. 2023)
*aff'd*, 128 F.4th 1148 (9th Cir. 2025) ........................................................ 25, 44

*Doe v. Grindr, LLC*,
No. 5:23-cv-193-JA-PRL, 2023 WL 7053471 (M.D. Fla. Oct. 26, 2023) ....... 44

*Doe v. Internet Brands, Inc.*,
824 F.3d 846 (9th Cir. 2016) ...................................................... 37, 38

*Doe v. Twitter, Inc.*,
   555 F. Supp. 3d 889 (N.D. Cal. 2021) ............................................... 40

*Dyroff v. Ultimate Software Grp., Inc.*,
   934 F.3d 1093 (9th Cir. 2019) ............................ 19, 22, 23, 37, 41, 43

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
   541 U.S. 246 (2004) ..................................................................... 27

*Est. of Bride ex rel. Bride v. Yolo Techs., Inc.*,
   112 F.4th 1168 (9th Cir. 2024),
   *cert. denied sub nom. Estate of Carson Bride, et al. v. Yolo Techs., Inc.*,
   No. 24-864, 2025 WL 889177
   (U.S. Mar. 24, 2025) ..................................... 2, 18, 29, 34-35, 37, 38, 42, 43, 46

*In re Facebook, Inc.*,
   625 S.W.3d 80 (Tex. 2021) ..................................... 35, 40, 43, 44, 48

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) ......................................... 1, 26, 30, 31

*Fields v. Twitter, Inc.*,
   217 F. Supp. 3d 1116 (N.D. Cal. 2016),
   *aff'd*, 881 F.3d 739 (9th Cir. 2018) ...................................................24

*Force v. Facebook, Inc.*,
   934 F.3d 53 (2d Cir. 2019) ............................................................. 32

*Herrick v. Grindr, LLC*,
   306 F. Supp. 3d 579 (S.D.N.Y. 2018),
   *aff'd*, 765 F. App'x 586 (2d Cir. 2019) ......................... 39, 44, 47-48

*Herrick v. Grindr LLC*,
   765 F. App'x 586 (2d Cir. 2019) ..................................................... 35

*Hunter v. Bryant*,
   502 U.S. 224 (1991) ...................................................................... 19

*Jane Doe No. 1 v. Backpage.com, LLC*,
   817 F.3d 12 (1st Cir. 2016) ....................................................... 31, 48

*Jones v. Dirty World Ent. Recordings LLC*,
   755 F.3d 398 (6th Cir. 2014) .......................................................... 33

*Karl v. City of Mountlake Terrace*,
  678 F.3d 1062 (9th Cir. 2012) ............................................................ 19

*Kimzey v. Yelp! Inc.*,
  836 F.3d 1263 (9th Cir. 2016) ........................................... 25, 32, 35

*Klayman v. Zuckerberg*,
  753 F.3d 1354 (D.C. Cir. 2014) ................................................. 32-33

*L.W. through Doe v. Snap Inc.*,
  675 F. Supp. 3d 1087 (S.D. Cal. 2023) ................................. 23, 24, 44

*Lemmon v. Snap, Inc.*,
  995 F.3d 1085 (9th Cir. 2021) ...................................................... 39, 40

*M.P. by & through Pinckney v. Meta Platforms Inc.*,
  127 F.4th 516 (4th Cir. 2025) .......................................... 23, 25, 49

*Marshall's Locksmith Serv. v. Google, LLC*,
  925 F.3d 1263 (D.C. Cir. 2019) ................................................. 24-25

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985) ..................................................................... 5, 19

*Moody v. NetChoice, LLC*,
  603 U.S. 707 (2024) .............................................................. 7, 47, 48

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009) ............................................................ 33

*O'Handley v. Padilla*,
  579 F. Supp. 3d 1163 (N.D. Cal. 2022),
  *aff'd sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023) ............... 47

*Packingham v. North Carolina*,
  582 U.S. 98 (2017) ....................................................................... 6

*Republican Nat'l Comm. v. Google, Inc.*,
  No. 2:22-CV-01904-DJC-JBP, 2023 WL 5487311
  (E.D. Cal. Aug. 24, 2023) ................................................................. 30

*Riggs v. MySpace, Inc.*,
    No. CV 09-03073-GHK (CTx), 2009 WL 10671689
    (C.D. Cal. Sept. 17, 2009) ................................................................ 45

*Salinas v. Amteck of Ky., Inc.*,
    682 F. Supp. 2d 1022 (N.D. Cal. 2010) ...................................... 48-49

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007) ............................................................ 48

*V.V. v. Meta Platforms, Inc.*,
    Doc. No. X06-UWY-CV-23-5032685-S, 2024 WL 678248
    (Conn. Super. Ct. Feb. 16, 2024) .................................................... 45

*Wozniak v. YouTube, LLC*,
    100 Cal. App. 5th 893 (2024),
    *as modified on denial of reh'g* (Apr. 2, 2024) .................................. 34

*Zango, Inc. v. Kaspersky Lab, Inc.*,
    568 F.3d 1169 (9th Cir. 2009) ................................................... 28, 30

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) .............................................. 22, 23, 31

*Zuffa, LLC v. Justin.tv, Inc.*,
    838 F. Supp. 2d 1102 (D. Nev. 2012) ............................................. 30

## Statutes

15 U.S.C. § 1261 ..................................................................................... 47
15 U.S.C. § 1333 ..................................................................................... 47
18 U.S.C. § 2252 ....................................................................................... 9
18 U.S.C. § 2255 ....................................................................................... 9
27 U.S.C. § 215(b) ................................................................................... 47
28 U.S.C. § 1291 .................................................................................... 4, 5
28 U.S.C. § 1292(b) ................................................................................ 13
28 U.S.C. § 1331 ....................................................................................... 4
28 U.S.C. § 1332(a) ................................................................................... 4
28 U.S.C. § 1367(a) ................................................................................... 4

47 U.S.C. § 230 ................................................................................ *passim*

47 U.S.C. § 230(a) ................................................................................ 32

47 U.S.C. § 230(b) ............................................................................27, 28

47 U.S.C. § 230(c) ........................ 1, 16, 17, 24, 26, 27, 28, 29, 30, 32, 37, 39, 48

47 U.S.C. § 230(e)(3) ................................................................ 1, 16, 27, 28, 29

## Regulations

21 C.F.R. § 201.56(d)(1) ...................................................................... 47

21 C.F.R. § 801.430 ............................................................................ 47

## Rules

FRAP 4(a)(1)(A) ................................................................................ 5

FRCP 12(b)(6) .................................................................................. 19

## INTRODUCTION

Section 230 of the Communications Decency Act confers immunity from suit on social media platform operators like Meta for claims that treat them as the publishers or speakers of third-party content posted on their platforms. *See* 47 U.S.C. § 230. Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider" and that "*[n]o cause of action may be brought* and no liability may be imposed under any State or local law that is inconsistent with this section," 47 U.S.C. § 230(c)(1) & (e)(3) (emphasis added).

As this Court has long recognized, Congress's intent in enacting Section 230 was to promote the continued development of the Internet by removing the chilling effect that even the threat of suit would have on the publication of third-party content. To effectuate its policy objectives—which are set forth expressly in the statute itself—Section 230 provides interactive computer service providers with both immunity from liability *and* immunity *from suit* arising from their publication of third-party content. *See Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1174-75 (9th Cir. 2008) (en banc) ("[S]ection 230 must be interpreted to protect websites *not merely from ultimate liability*, but from *having to fight costly and protracted legal battles*." (emphasis added)).

The question on this appeal is straightforward: whether the district court erred in permitting plaintiffs' failure to warn claims relating to certain platform features to proceed, even though plaintiffs' other claims as to the *same features* are barred by Section 230. The answer is yes under the plain text of the statute and this Court's well-settled precedents, including recent cases making clear that "failure to warn" claims do not escape Section 230 immunity where, as here, the alleged duty to warn relates directly to publishing activity that is at the heart of Section 230. *See Est. of Bride ex rel. Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1179-81 (9th Cir. 2024), *cert. denied sub nom. Estate of Carson Bride, et al. v. Yolo Techs., Inc.*, No. 24-864, 2025 WL 889177 (U.S. Mar. 24, 2025); *Doe v. Grindr Inc.*, 128 F.4th 1148, 1154 (9th Cir. 2025).

Plaintiffs' failure to warn claims force Meta to litigate claims from which it is statutorily immune from suit. Section 230 immunizes interactive computer service providers like Meta from suits that treat such providers as the publisher or speaker of third-party content. Using sophisticated technologies, Meta organizes and presents a vast array of diverse content posted by its billions of users, precisely the type of conduct constituting publishing activity that Section 230's operative provisions and stated policy goals are designed to protect. As the district court held, plaintiffs' claims alleging the harmful design of Meta's platform features are

2

plainly barred by Section 230 because such claims directly target Meta's role as a publisher.

Though packaged differently, plaintiffs' failure to warn claims necessarily turn on Meta's role and conduct as a publisher of third-party content—activity that the district court correctly held is protected by Section 230. The district court erred by nevertheless allowing the failure to warn claims to proceed. That ruling contravenes Section 230's immunity from suit—which necessarily bars *all* claims that treat Meta as a publisher—and gives rise to this collateral order appeal. In other words, where Section 230 bars claims that would hold Meta liable for third-party content based on certain of its publishing tools, duty to warn claims challenging the same publication tools are also barred. Any other result would allow plaintiffs to simply plead around Section 230 even where their claims directly target publishing activity and functionally identical claims are barred. Such an approach would run afoul of the plain text and express purpose of the statute—to preclude interactive computer service providers like Meta from being sued for the alleged harmful effects of third-party content on their sites. That is alone sufficient for this Court to reverse.

In addition, separate and apart from the district court's ruling as to other claims, plaintiffs' failure to warn theory viewed in isolation seeks to impose liability on Meta as a publisher and therefore runs afoul of Section 230. The

district court erred in not dismissing on that additional basis. Recent precedents of this Court confirm that the application of Section 230 turns on whether the duty allegedly violated derives from the defendant's publishing role or conduct. Here, the platform features at issue unequivocally constitute publishing activity and the claims seek to hold Meta liable in its role as a publisher. Consistent with this Court's precedents, plaintiffs' failure to warn claims based on Meta's status or conduct as a publisher must be barred under Section 230.

This Court should correct the district court's error and reverse.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over the constituent cases in this multidistrict litigation pursuant to 28 U.S.C. §§ 1331, 1332(a), and 1367(a).

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. This appeal is from two collateral orders denying Meta's[1] motions to dismiss

---

[1] The Meta Defendants-Appellants are referred to herein collectively as "Meta." This term refers to Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc., and Meta Platforms Technologies, LLC, where relevant to the Multistate Complaint; it refers to Meta Platforms, Inc., Facebook Holdings, LLC, Facebook Operations, LLC, Meta Payments Inc., Siculus, Inc., and Instagram, LLC, where relevant to the School District and Local Government Entities Complaint; and it refers to Meta Platforms, Inc., Facebook Payments, Inc., Siculus, Inc., Facebook Operations, LLC, and Instagram, LLC, where relevant to the Personal Injury Second Amended Master Complaint. Each "Meta" entity reserves its rights and defenses, including as to whether it is properly named as a defendant in each of these complaints.

failure to warn claims relating to certain platform features for which Meta is immune from suit under Section 230, 47 U.S.C. § 230. Orders denying immunity from suit are immediately appealable final decisions for purposes of 28 U.S.C. § 1291 under the collateral order doctrine. *See Mitchell v. Forsyth*, 472 U.S. 511, 527-30 (1985); *Batzel v. Smith*, 333 F.3d 1018, 1026 (9th Cir. 2003). That is because, among other things, delaying an appeal until after a final judgment would irreparably deprive Meta of the statutory right to be free from having to defend itself against such claims.

Meta filed a timely notice of appeal on November 14, 2024. *See* Fed. R. App. P. 4(a)(1)(A); 6-ER-1413 (Notice of App. (4:23-cv-05448)); 6-ER-1418 (Notice of App. (4:22-md-03047)).

## ISSUE PRESENTED

Whether the district court erred in its collateral orders denying Meta's motions to dismiss plaintiffs' claims for failure to warn of alleged risks relating to certain platform features protected by Section 230, when those platform features constitute publishing activities for which Meta is immunized from suit.

## STATEMENT OF THE CASE[2]

### A.    Meta's Social Media Platforms

Meta operates Facebook and Instagram, two of the world's most popular

social media platforms.  4-ER-704 ¶ 181 (Personal Injury Pls.' Compl.).  Facebook

and Instagram curate, arrange, and disseminate a massive array of diverse

content—including photos, videos, music, and writings—created by Meta's

billions of users.  6-ER-1189-90 ¶¶ 26, 35 (Multistate Compl.); *see also*

*Packingham v. North Carolina*, 582 U.S. 98, 104-05 (2017) (describing social

media platforms, including Facebook, as places where billions of people

communicate "on topics as diverse as human thought" (quotation marks omitted)).

Through Facebook and Instagram, Meta curates, arranges, and disseminates

this vast quantity of material to facilitate beneficial social interactions and promote

content of likely interest to users, such as content generated by one's friends or

relatives.  *See* 3-ER-450 ¶ 383 (School District Compl.).  At the same time, Meta

strives to "amplify the good [content on its platforms] and mitigate the bad."  *Id.* at

491 ¶ 497(g).  To best effectuate these goals, Meta has developed sophisticated

---

[2] For purposes of this appeal only, Meta accepts as true plaintiffs' non-conclusory factual allegations.  For the avoidance of doubt, Meta disputes and does not concede the accuracy of plaintiffs' claims and allegations—including about the nature of Meta's businesses and responsibility for purported harms—which it expressly reserves the right to challenge in any concurrent or future phase of litigation.

technologies to organize and present third-party content.  *See, e.g.*, 6-ER-1202 ¶ 87, 6-ER-1213 ¶ 167 (Multistate Compl.); 4-ER-726 ¶ 250 (Personal Injury Pls.' Compl.); 3-ER-454 ¶ 393 (School District Compl.).  These publication tools provide each user a unique experience on the platforms, reflecting the countless editorial choices Meta makes every day.  6-ER-1213-14 ¶¶ 166-67, 173 (Multistate Compl.); 4-ER-726 ¶ 250 (Personal Injury Pls.' Compl.); 3-ER-431 ¶ 331 (School District Compl.); *Moody v. NetChoice LLC*, 603 U.S. 707, 734, 739 (2024) (Meta "delivers a personalized collection of [content]" to its users "through the use of algorithms" and makes "editorial decisions about which posts to remove, label, or demote").

**B.    Plaintiffs' Complaints**

Various groups of plaintiffs sued Meta and other operators of large social media platforms alleging that certain platform features fostered compulsive use by minors, thereby engaging in unfair business practices and causing mental and physical harm.[3]  *See* 6-ER-1183 ¶ 1, 6-ER-1267 ¶¶ 520-21 (Multistate Compl.); 4-ER-655 ¶¶ 1-3, 4-ER-661 ¶ 21 (Personal Injury Pls.' Compl.); 3-ER-323 ¶ 1, 3-ER-325 ¶ 7, 3-ER-330 ¶ 19 (School District Compl.).  Plaintiffs assert multiple theories of liability, including failure to warn, negligence, product liability, state

---

[3] Across all complaints, plaintiffs have brought claims against Meta, Snapchat, Google, and TikTok.

consumer protection, and other common law tort and statutory claims.  *See* 6-ER-1327-1380 ¶¶ 851-1171 (Multistate Compl.); 4-ER-888-913 ¶¶ 831-993, 5-ER-915-24 ¶¶ 993-1093 (Personal Injury Pls.' Compl.); 4-ER-619-38 ¶¶ 966-1043 (School District Compl.).

These actions were consolidated into a multidistrict litigation in the Northern District of California.  The district court phased motion to dismiss briefing into multiple tracks, three of which are relevant here: (1) the personal injury ("Personal Injury") plaintiffs' five priority claims, (2) the multistate attorneys general's ("State AGs") complaint and the Personal Injury plaintiffs' consumer protection and misrepresentation claims, and (3) the school district and local government entities ("School District") plaintiffs' complaint.  *See* 8-ER-1953 (District Court Dkt. (4:22-md-03047), ECF No. 451).  Following these tracks, defendants moved to dismiss the complaints on various grounds, including Section 230.

### C.    Defendants' Motions to Dismiss the Complaints

#### 1. *Personal Injury Plaintiffs' Priority Claims*

Through a master complaint and accompanying individual short form complaints, hundreds of Personal Injury plaintiffs assert 14 claims against

defendants under various state laws.[4]  *See generally* 4-ER-649-913, 5-ER-915-27 (Personal Injury Pls.' Compl.).  The claims include the Personal Injury plaintiffs' five "priority" claims—four product liability claims and one for negligence per se. *See* 8-ER-1908 (District Court Dkt. (4:22-md-03047), ECF No. 131).  The product liability claims are based on allegations that various features of defendants' platforms encourage compulsive use by minor users, and that defendants fail to warn users about various alleged harms.  4-ER-655 ¶ 1, 4-ER-889-903 ¶¶ 832-913 (Personal Injury Pls.' Compl.).

On June 27, 2023, defendants moved to dismiss the priority claims on Section 230 and First Amendment grounds.  8-ER-1934 (District Court Dkt. (4:22-md-03047), ECF No. 320).  As relevant here, defendants argued that because the Personal Injury plaintiffs "allege harms arising from content supplied by users" and thus seek to hold defendants liable "as a publisher or speaker of content provided by someone else," their claims are necessarily barred by Section 230.  *Id.* at 5, 14.

---

[4] The Personal Injury plaintiffs' complaint includes Strict Liability (Design Defect); Strict Liability (Failure to Warn); Negligence (Design); Negligence (Failure to Warn); Negligence; Violation of Unfair Trade Practices/Consumer Protection Laws; Fraudulent Concealment and Misrepresentation; Negligent Concealment and Misrepresentation; Negligence Per Se; Violations of 18 U.S.C. §§ 2255 and 2252; Violations of 18 U.S.C. §§ 2255, and 2252A(5)(b); Wrongful Death; Survival Action; and Loss of Consortium and Society claims.  4-ER-888-913 ¶¶ 831-993, 5-ER-915-24 ¶¶ 993-1093 (Personal Injury Pls.' Compl.).

### 2. *State Attorneys General and Certain of Personal Injury Plaintiffs' Non-Priority Claims*

On October 24, 2023, the State AGs filed a consolidated complaint against Meta asserting 54 causes of action, including claims under various state consumer protection laws. *See generally* 6-ER-1178-1412 (Multistate Compl.). The State AGs assert that Meta's deployment and design of certain features of Facebook and Instagram harmed minor users, and that Meta failed to warn the public about such harms. *Id*. at 1183 ¶ 2.

On December 22, 2023, Meta moved to dismiss on Section 230 and First Amendment grounds all consumer protection claims brought by the State AGs and Personal Injury plaintiffs that targeted the design and development of Meta's platform features as well as claims predicated on Meta's alleged failure to provide warnings regarding harms allegedly relating to those features. 9-ER-2129 (District Court Dkt. (No. 4:23-cv-05448), ECF No. 83). Meta argued that because the consumer protection claims "overwhelmingly seek to hold Meta liable for its decisions about whether and how to publish third-party content," they were barred by Section 230. *Id.* at 20. As to the claims regarding Meta's omissions or failure to warn of the alleged harms arising from the challenged design features, Meta argued that the plaintiffs could not "simply repackage impermissible claims involving alleged harm from third-party content as an omission claim." *Id.* at 23.

### 3. School Districts and Local Government Entities' Claims

The School District plaintiffs' master complaint asserts claims of public nuisance and negligence (including under a failure to warn theory). *See generally* 3-ER-318-616, 4-ER-618-42 (School District Compl.). These plaintiffs seek recovery for costs they allegedly incurred as a result of a youth mental health crisis that they claim was caused by defendants' platforms. *Id.* On February 5, 2024, defendants moved to dismiss the School District plaintiffs' master complaint on Section 230, First Amendment, and various state law grounds. 8-ER-1972 (District Court Dkt. (No. 4:22-md-03047), ECF No. 601). Defendants argued that Section 230 barred the claims and that the "title of the School Districts' claims does not change [the Section 230] analysis." *Id.* at 6.

### D. The District Court's Motion to Dismiss Orders

#### 1. Personal Injury Plaintiffs' Priority Claims Order (November 14, 2023)

On November 14, 2023, the Court granted in part and denied in part defendants' motion to dismiss the Personal Injury plaintiffs' five priority claims. 5-ER-928-29 (November 14, 2023 MTD Order). Among other rulings, the Court dismissed the product liability claims relating to the following alleged design defects as barred by Section 230 because they "directly target[ted] defendants' roles as publishers of third-party content" and would "inherently limit what defendants are able to publish," *id.* at 943:

11

- **Infinite Scroll and Autoplay Features**, which allow users to receive third-party content without interruption (e.g., on "a continuous feed"), *id.* at 931;

- **Geolocation Features**, which permit users to "share their location with other users," *id.* at 933;

- **Account Recommendation Features**, which suggest that a user "'friend,' 'follow,' or otherwise connect with [certain] other users," *id.*;

- **Ephemeral and Private Content Features**, which permit users to share content for a limited duration of time or with a limited audience, *id.* at 931, 933;

- **Certain Timing Features**, which refer to plaintiffs' allegations that Meta did not "put 'default protective limits to the length and frequency of sessions'" or "institute 'blocks to use during certain times of day,'" *id.* at 943;

- **Notifications**, which "alert users to third-party content," including those that "someone has commented on or liked a user's post," *id.* at 945; and

- **Algorithms**, which "determine whether, when, and to whom" third-party content is served, *id.* at 945-946.

Although the district court dismissed multiple product liability claims with respect to these features as barred by Section 230 because they would render Meta

12

liable for publishing activity, it denied defendants' motion to dismiss the failure to warn claims targeting those same features. *Id*. at 947. In a single paragraph and without citing authority, the district court held that the Personal Injury plaintiffs plausibly alleged that defendants "distributed defective and unreasonably dangerous products without adequately warning users of" risks associated with platform use. *Id.* The district court further found that the failure to warn claims "plausibly allege[d] that defendants [were] liable for conduct other than publishing of third-party content and that they could address their duty to warn without changing what they publish." *Id.*[5]

### 2. *Multistate AGs Order (October 15, 2024)*

On October 15, 2024, the district court granted in part and denied in part Meta's motion to dismiss the State AGs' complaint. 1-ER-49 (October 15, 2024 MTD Order). As in the November 2023 order, the district court dismissed the State AGs' consumer protection claims based on alleged unfair and unconscionable business practices that targeted the product design and

---

[5] Following the district court's November 2023 ruling, defendants moved to certify the failure to warn issue for interlocutory appeal under 28 U.S.C. § 1292(b). 8-ER-1956 (District Court Dkt. (4:22-md-03047), ECF No. 473). The district court denied the motion as "premature[,]" because related motion to dismiss briefing was still ongoing at that time. 4-ER-643. As discussed below, the district court has since published the two at-issue October 2024 rulings squarely addressing defendants' Section 230 arguments.

development of certain platform features, applying its prior reasoning to find liability for these features barred by Section 230—specifically, infinite scroll and autoplay; ephemeral content; notifications; and algorithms. *Id.* at 72-76 (citing 5-ER-943-46 (November 14, 2023 MTD Order)). The district court further held that consumer protection claims based on the quantification and display of "Likes," which "are a quick way for users to express validation or approval of other users' [content]," were also barred by Section 230 as a "content-neutral means of displaying a form of third-party content on Meta's platforms." *Id.* at 73-74.

As in the November 2023 ruling, the district court dismissed the State AGs' consumer protection claims based on business practices as barred by Section 230 immunity but denied Meta's motion to dismiss the State AGs' and Personal Injury plaintiffs' claims pursued on a failure to warn theory with respect to the same features. *Id.* at 143-144. The district court nonetheless noted its "skepticism" of these claims and stated that "these novel theories" regarding how failure to warn claims should be treated under Section 230 "test the boundaries of an area of law in some flux." *Id.* at 83-84.

### 3. School District and Local Government Entities Order (October 24, 2024)

On October 24, 2024, incorporating by reference its previous conduct-specific Section 230 analysis, the district court, in relevant part, dismissed the School District plaintiffs' negligence claims relating to features previously found

14

immune under Section 230, but declined to dismiss the failure to warn claims relating to those same features.  1-ER-14-15 (October 24, 2024 MTD Order).

### E.     Meta's Appeal

On November 14, 2024, Meta filed a notice of appeal from the October 2024 orders to the extent they denied Meta's Section 230 motion as to the failure to warn claims relating to platform features that the district court already correctly held amount to protected publishing activity.  6-ER-1415 (Notice of App. (4:23-cv-05448)); 6-ER-1420 (Notice of App. (4:22-md-03047)).  On November 27, 2024, the plaintiffs filed notices of conditional cross-appeals.  9-ER-2060 (District Court Dkt. (4:22-md-03047), ECF Nos. 1386, 1388).  TikTok filed a notice of appeal on November 29, 2024.  9-ER-2060 (District Court Dkt. (4:22-md-03047), ECF No. 1389).  The appeals were consolidated on December 20, 2024.  *See* App. No. 24-7032, App. Dkt. No. 62, at 4.

Plaintiffs moved to dismiss Meta's appeal.  *See* App. No. 24-7032, Dkt. No. 36 (State AGs' Mot. to Dismiss App.); App. No. 24-7037, App. Dkt. No. 43 (Personal Injury and School District plaintiffs' Mot. to Dismiss App.).  Meta opposed and cross-moved to dismiss plaintiffs' cross-appeals.  App. No. 24-7032, Dkt. No. 71; App. No. 24-7037, Dkt. No. 73.  TikTok joined in Meta's opposition and cross-motion to dismiss.  App. No. 24-7032, Dkt. No. 72; App. No. 24-7037, Dkt. No. 74.

On March 3, 2025, this Court denied the motions to dismiss the appeals and cross-appeals without prejudice to renewing the jurisdictional arguments in the briefs.  App. No. 24-7037, Dkt. No. 82.

## SUMMARY OF THE ARGUMENT

The district court's ruling denying Meta's motion to dismiss plaintiffs' failure to warn claims as to the features at issue on appeal contravenes the plain text of Section 230 and this Court's precedents.  The ruling should be reversed because it would force Meta to litigate claims from which it is statutorily immune.

*First*, the district court's denial of immunity from suit not only forms the jurisdictional basis for requiring immediate appellate review under the collateral order doctrine, but it is also grounds for reversal.  Under the plain text of Section 230 and this Court's well-settled interpretation of the statute, Section 230 confers immunity from suit, not just from ultimate liability.  Section 230(c)(1) provides that: "No provider of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  Section 230(e)(3) further states that "*[n]o cause of action may be brought* and no liability may be imposed under any State . . . law that is inconsistent with this section."  47 U.S.C. § 230(e)(3) (emphasis added).  The provisions, read together, not only confer immunity from liability, but also

provide immunity from suit with respect to any claim covered by Section 230(c)(1).

Meta's immunity from suit as to design defect claims relating to multiple, specific platform features must extend to plaintiffs' failure to warn claims regarding those *same features*. Having correctly determined that the features at issue constitute protected publishing activity, and therefore that plaintiffs' design defect claims based on those features were barred, the district court erred by permitting plaintiffs to circumvent Section 230's broad immunity from suit by recasting their barred claims under another theory. This Court's precedents make clear that plaintiffs cannot plead around Section 230 immunity by pursuing claims on a failure to warn (or any other) theory. If plaintiffs were permitted to recast their claims on a failure to warn theory, the resulting exception to Section 230 immunity would swallow the rule, and Meta would be forced to litigate claims from which it is immune.

*Second*, the district court's decision should be reversed irrespective of the district court's dismissal of other claims because plaintiffs' failure to warn claims, even if viewed in isolation, seek to hold Meta liable for alleged harm that derives from Meta's status or conduct as a publisher—the type of claims this Court has repeatedly held are barred by Section 230. This Court has recognized that, in determining whether Section 230 immunity applies, the inquiry is "whether the

cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009), *as amended* (Sept. 28, 2009). As set forth below, plaintiffs' claims seek to hold Meta liable for allegedly failing to issue warnings — activity that would unequivocally hold Meta liable as a publisher under this Court's precedents.

This Court has repeatedly—and recently—held that failure to warn claims like plaintiffs' are barred by Section 230. These cases make clear that the statute bars failure to warn claims because those claims arise from the defendants' status or conduct as a publisher. Indeed, this Court recently confirmed that where a claim alleges a duty to warn that "stem[s] from the platform's status as a publisher . . . it is barred by § 230." *Bride*, 112 F.4th at 1177. And as this Court held in its most recent ruling on this subject, because an interactive computer service provider's "role as a publisher of third-party content does not give it a duty to warn users of 'a general possibility of harm' resulting from the App," plaintiffs cannot plead around Section 230 by asserting a failure to warn theory that "necessarily implicates [the defendant's] role as a publisher of third-party content." *Grindr*, 128 F.4th at 1152-54 (quoting *Bride*, 112 F.4th at 1181). Under these precedents, Meta cannot be held liable under a failure to warn theory that is based on the use of publishing tools and features on its platform.

For these reasons and as set forth below, the district court erred in failing to apply Section 230's broad immunity from suit to bar the failure to warn claims.

## STANDARD OF REVIEW

This Court reviews de novo both a district court's decision to grant or deny motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) and related questions of statutory interpretation. *Dyroff v. Ultimate Software Grp., Inc*., 934 F.3d 1093, 1096 (9th Cir. 2019) (affirming dismissal of complaint under Section 230). Appeals challenging a collateral order denying immunity from suit are subject to de novo review. *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1067 (9th Cir. 2012).

## ARGUMENT

Because this appeal turns on the district court's denial of Meta's immunity from suit under Section 230, it is immediately reviewable under the collateral order doctrine. *See Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985). Absent this appeal, Meta would be required to litigate claims from which it is statutorily immune. To avoid such a result, the question of immunity from suit should be resolved as early as possible in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).[6]

---

[6] Meta does not interpret this Court's order denying plaintiffs' motions to dismiss Meta's appeal without prejudice as requiring renewed jurisdictional arguments in the merits briefing. *See* App. No. 24-7037, Dkt. No. 82 (Mar. 3,

I.      **The District Court Erred by Forcing Meta to Litigate Failure to Warn Claims for Which It Is Immune from Suit Under Section 230**

The district court erred in denying Meta's motion to dismiss plaintiffs' failure to warn claims—which relate to the *same features* that the district court correctly held amount to publishing activity in dismissing plaintiffs' underlying consumer protection claims on Section 230 grounds. Tellingly, while allowing the failure to warn claims to proceed past the motion to dismiss, the district court acknowledged its own "skepticism" that those claims would even survive summary judgment. *See* 1-ER-84 (October 15, 2024 MTD Order).

Because Meta's entitlement to Section 230 immunity from suit is apparent from the face of the pleadings, as the district court correctly determined, Meta may not be subjected to further litigation on any claims relating to those features. *See* 5-ER-933, 5-ER-943-46 (November 14, 2023 MTD Order) (dismissing product defect claims related to various features under Section 230 based on allegations in the complaints and noting that "[t]he failure to warn claims are similarly based on the [same] alleged defects"); 1-ER-143 (October 15, 2024 MTD Order) (adopting

---

2025). Out of an abundance of caution, however, Meta hereby incorporates the arguments and authorities set forth in its opposition to plaintiffs' motions to dismiss in support of the jurisdictional basis for this collateral order appeal. *See* App. No. 24-7032, Dkt. No. 71 (Jan. 10, 2025); App. No. 24-7037, Dkt. No. 73 (Jan. 10, 2025). To the extent plaintiffs renew their jurisdictional arguments in their merits brief, Meta will further address those arguments in its response brief.

"the same [Section 230] approach the Court employed in [the November 14, 2023 MTD Order]"). The district court's decision to nevertheless require Meta to participate in discovery and costly litigation on the failure to warn claims contravenes the plain language of Section 230 and binding precedent. This Court should reverse.

### A. The District Court Correctly Held That Claims Relating to the Platform Features at Issue Treat Meta As a Publisher of Third-Party Content

The district court correctly determined that the platform features at issue—to be clear, the same features underlying the failure to warn claims—amount to publishing activity and further determined that numerous claims relating to those features must be dismissed on Section 230 grounds.

Section 230 precludes liability against "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes*, 570 F. 3d at 1100-01. All three requirements are satisfied with respect to plaintiffs' allegations relating to the features at issue.

The first and third prongs can be dispensed with swiftly. On the first prong, plaintiffs do not dispute that Meta is a provider of interactive computer services. 5-ER-937 (November 14, 2023 MTD Order). And the third prong is satisfied by

21

the absence of any allegations that Meta, via the features that the district court properly held are protected by Section 230, "modif[ies] or develop[s] the content" supplied by third parties that Meta disseminates on its platforms. *Id*. at 945 n.22.

As to the second prong, the district court correctly held that plaintiffs' claims relating to the platform features at issue seek to hold Meta liable as a publisher. 1-ER-72 (October 15, 2024 MTD Order); 1-ER-15 (October 24, 2024 MTD Order). Section 230 bars claims like plaintiffs' that seek to hold the interactive computer service provider liable for third-party speech or the manner in which that speech is published. *See, e.g.*, *Dyroff*, 934 F.3d at 1099 (Section 230 immunizes providers of third-party content who do not "materially contribute[] to the content posted," and "a website does not become a developer of content when it provides neutral tools that a user exploits"); *Barnes*, 570 F.3d at 1102 (Section 230 bars claims where the "duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher'"). This Circuit and others have held that publishing "involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Id.*; *see also Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) (Section 230 bars "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions[.]"). Each of plaintiffs' claims is based on an alleged addiction to consuming content, and the features they target are the means through which Meta

22

organizes and presents third-party content to its users.  *See supra* Statement of the Case Section D.1.  Therefore, Meta's decisions about how to organize and present content are inherent to the act of publishing, and lawsuits targeting such decisions are plainly barred by Section 230.  *See Barnes*, 570 F.3d at 1102; *Zeran*, 129 F.3d at 330.

Taking the features in turn, Meta's **recommendation algorithm** and **notifications** facilitate when, how, and to whom third-party content will be provided—quintessential publishing activities.  *See Dyroff*, 934 F.3d at 1098 (finding platform immune under Section 230 for its use of recommendation algorithms and notifications, which merely "facilitate the communication and content of others"); *M.P. by & through Pinckney v. Meta Platforms Inc.*, 127 F.4th 516, 526 (4th Cir. 2025) (finding tort claims barred by Section 230 because claims attacking the manner in which Facebook's algorithm sorts, arranges, and distributes third-party content was an attempt to hold Facebook liable as a publisher of such content); *Doe (K.B.) v. Backpage.com, LLC*, No. 23-CV-02387-RFL, 2025 WL 719080 at *3 (N.D. Cal. Mar. 3, 2025) (rejecting claims based on algorithms that "create[] connections" between platform users as barred by Section 230); *L.W. through Doe v. Snap Inc.*, 675 F. Supp. 3d 1087, 1100 (S.D. Cal. 2023) (claims based on feature that recommends users to one another were barred by Section 230).

Meta's display of **ephemeral content** (content that is available on the platform only for a limited time) amounts to the most basic publishing decision of when to "publish [and] withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102; *see also L.W.*, 675 F. Supp. 3d at 1097 (the use of "ephemeral design features" qualify as a "publication function"). Further, the transmission of **private messaging** is inherently the publishing of content provided by another, regardless of whether that content is displayed publicly. *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1127-28 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th Cir. 2018) ("publishing activity under section 230(c)(1) extends to" tools "which allow for the sending of private messages"). Similarly, Meta's decisions regarding **certain timing features** on its platforms—which determine when users may access its platforms to receive third-party content—are just as fundamental to publishing as determining when the content will be published. *Cf. id*. at 1124 (the decision to "prohibit a particular user from obtaining an account [to access the platform] is itself publishing activity").

The presentation of third-party content on a continuous digital surface (i.e., the **infinite scroll** feature) also reflects a routine publishing consideration of how to arrange third-party material, akin to a newspaper editor determining the total length of a newspaper or whether an article should be presented on a single page or multiple pages of a magazine. *See Marshall's Locksmith Serv. Inc. v. Google*,

*LLC*, 925 F.3d 1263, 1270-71 (D.C. Cir. 2019) (explaining that the use of a neutral algorithm "to present . . . third-party data in a particular format" is protected by Section 230); *Pinckney*, 127 F.4th at 526 ("Decisions about whether and how to display certain information provided by third parties are traditional editorial functions of publishers"—including newspapers and platforms like Facebook alike—"notwithstanding the various methods they use in performing that task.").

Finally, **"Likes"** and **geolocation data** are forms of third-party content because the information—an expression of approval, and the geographic location of the user's device, respectively—are supplied by the user, and holding Meta liable for the alleged effects on users of publishing that content falls squarely within Section 230. *See Kimzey v. Yelp!, Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016) (holding that Yelp could not be liable for the use of its five-star rating system, "based on rating inputs from third parties," or its decision to "reduce[] this information into a single, aggregate metric"); *Doe v. Grindr Inc.*, 709 F. Supp. 3d 1047, 1053 (C.D. Cal. 2023) ("geolocation data . . . is third-party content generated by the user"), *aff'd*, 128 F.4th 1148 (9th Cir. 2025).

**B.      The District Court Erred by Not Dismissing Plaintiffs' Failure to Warn Claims Relating to Platform Features Protected by Section 230**

The district court correctly concluded that the platform features at issue amount to publishing activity under Section 230.  Because plaintiffs sought to base

failure to warn claims on those same publishing features, the district court should have dismissed the failure to warn claims along with the plaintiffs' other claims based on the very same features.  That is because statutory immunity from suit necessarily bars *all* claims that treat Meta as a publisher.  Instead, the district court erred by allowing the failure to warn claims relating to these same features to proceed, thereby allowing plaintiffs to plead around Section 230's immunity from suit.

### 1. Section 230 Confers Broad Immunity from Suit

Section 230 is an immunity from suit, not just from ultimate liability. Applying the plain language of the statute, this Court has consistently held for two decades that Section 230 confers immunity from suit.  *See Roommates*, 521 F.3d at 1174-75; *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123-25 (9th Cir. 2003) ("Under § 230(c), . . . so long as a third party willingly provides the essential published content, the interactive [computer] service provider receives *full immunity* regardless of the specific editing or selection process . . . . Congress intended that service providers . . . be afforded immunity *from suit*." (emphases added)).

The improper denial of immunity from suit (in addition to providing the jurisdictional basis for immediate appellate review) is grounds for reversal.  The district court's decision not to dismiss claims based on conduct that, on the face of

26

the pleadings, it determined constitutes publishing activity protected by Section 230 contravenes the plain language of the statute and is incompatible with established precedent, which emphasizes the importance of Section 230's broad provision of immunity from suit.

> a. *The Plain Text of Section 230 Provides for Immunity from Suit*

Section 230's provisions—specifically, Sections 230(b), (c)(1), and (e)(3)—express Congress's intent that Section 230 provide an immunity from suit.

Section 230(c)(1) provides: "No provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Under the principles of statutory construction, this Court "must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004) (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985)). Here, the legislative purpose could not be clearer. That is because the statute's express "policy" objectives are contained in the statute itself:

> It is the policy of the United States to promote the continued development of the Internet and other interactive computer services and other interactive media; to preserve the vibrant and competitive free market that presently exists for the Internet and other interacting computer services, unfettered by Federal or State regulation; to encourage the development of technologies which maximize user

27

> control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services; [and] to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material.

47 U.S.C. § 230(b)(1)-(4).  Reading these provisions together, Section 230(c)(1) effectuates the policy objectives in Section 230(b) by requiring that "Internet publishers [be] treated differently from corresponding publishers in print, television and radio" by affording service providers immunity from suit arising from information provided by third parties.  *Carafano*, 339 F.3d at 1122, 1125; *see also Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1174 (9th Cir. 2009) (holding Section 230 immunity from suit applied to claims at issue because the protection was "consistent with the Congressional goals for immunity articulated in § 230 itself").  Interpreting Section 230 to provide only immunity from liability and not immunity from suit would contravene the language of the statute, including the express policy objectives set forth in the statute itself.

Section 230(e)(3) in turn provides that "*[n]o cause of action may be brought and no liability may be imposed under any State . . . law that is inconsistent with this section.*"  47 U.S.C. § 230(e)(3) (emphasis added).  The "no cause of action may be brought" language in Section 230(e)(3) reinforces and effectuates Section 230(c)(1)'s provision of immunity from suit, making clear that a defendant not

only may not be liable for a claim covered by Section 230(c)(1), but also may not be subject to suit for such a claim.[7]

Reading Section 230(e)(3) in conjunction with the remainder of the statute confirms that Section 230 confers immunity from suit. *See Bride*, 112 F.4th at 1175-77 ("§ 230 immunity is extraordinarily powerful, granting complete immunity where it applies and, *in the process*, preempting even the will of the people as expressed in their state legislatures" (emphasis added)); *Barnes*, 570 F.3d at 1100-01 ("Subsection 230(e)(3) makes explicit the relevance of th[e] definition" in Section 230(c)(1) and evaluating the scope of Section 230(c)(1) by "[b]ringing these two subsections together.").

### b. This Court's Binding Precedent and Decisions of Other Courts Confirm That Section 230 Provides for Immunity from Suit

In declining to apply Section 230 immunity from suit to plaintiffs' failure to warn claims, the district court's decision contravenes the case law of this Circuit

---

[7] Likewise, reading Section 230(e)(3) as solely a preemption provision, as plaintiffs have asserted (*see* App. No. 24-7032, Dkt. No. 36 (State AGs' Mot. to Dismiss App.); App. No. 24-7037, Dkt. No. 43 (Personal Injury and School District plaintiffs' Mot. to Dismiss App.)), would impermissibly render the first clause meaningless because the language "no liability may be imposed" that immediately follows is already sufficient to provide preemption on its own. Further, that courts have read Section 230(e)(3) as a preemption provision is entirely consistent with both the plain text of the statute and this Court's conclusion that Section 230 confers immunity from suit from claims under state laws that are inconsistent with Section 230.

and others. This Court has repeatedly held that Section 230 confers on online service providers like Meta a broad federal immunity from suit related to their provision of user-generated content. *Roommates*, 521 F.3d at 1174-75 ("[S]ection 230 must be interpreted to protect websites *not merely from ultimate liability*, but from *having to fight costly and protracted legal battles*." (emphases added)); *Carafano*, 339 F.3d at 1125 (In enacting Section 230, "*Congress intended that service providers . . . be afforded immunity from suit*." (emphasis added)); *see also Zango*, 568 F.3d at 1173 (concluding that Section 230(c) "plainly immunizes [interactive computer service providers] from suit").

District courts have also long recognized that Section 230 confers immunity from suit. *See, e.g.*, *Republican Nat'l Comm. v. Google, Inc.*, No. 2:22-CV-01904-DJC-JBP, 2023 WL 5487311, at *8 (E.D. Cal. Aug. 24, 2023) (recognizing "the Ninth Circuit's characterization of [S]ection 230 as an immunity from suit" (citing *Roommates*, 521 F.3d at 1175)); *Zuffa, LLC v. Justin.tv, Inc.*, 838 F. Supp. 2d 1102, 1107 (D. Nev. 2012) (noting "Section 230 provides broad immunity from suit" (citing *Carafano*, 339 F.3d at 1122-23)).

Moreover, immunizing interactive computer service providers like Meta from a finding of *liability*, after forcing them to endure the risks and burdens of litigation, would directly conflict with the statute's purpose. As this Court has emphasized, Section 230's provision of broad immunity from suit is critical to its

objectives "to promote the free exchange of information and ideas over the Internet" and to "immunize service providers to avoid [the] restrictive effect" that "[t]he specter of tort liability" would have on online speech interests. *Carafano*, 339 F.3d at 1122-24 (9th Cir. 2003); *see also Batzel*, 333 F.3d at 1027 ("Section 230 was enacted, in part, to maintain the robust nature of Internet communication, and accordingly, to keep government interference in the medium to a minimum." (quotation marks omitted)); *Roommates*, 521 F.3d at 1174 (instructing courts to "keep firmly in mind that [Section 230] is an immunity statute," and that "[c]lose cases . . . must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites").

Without this essential "preference for broad construction," expansive liability for online service providers "would have an obvious chilling effect" on the dissemination of third-party speech. *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 18-19 (1st Cir. 2016) (citing *Zeran*, 129 F.3d at 331), *cert. denied*, 137 S. Ct. 622 (2017). Congress "considered the weight of the speech interests implicated" by online service providers being "[f]aced with potential liability" for the "staggering" amount of user-generated content they disseminate and, fearing that providers "might choose to severely restrict the number and type of messages posted, . . . chose to immunize service providers to avoid any such restrictive effect." *Zeran*, 129 F.3d at 331.

31

This Court has therefore "treated § 230(c) immunity as quite robust," *Carafano*, 339 F.3d at 1123—and maintaining this embrace of the statute's broad protection is critical to enabling the continued growth of an Internet that "ha[s] flourished" with the development of new online services and technologies. *Kimzey*, 836 F.3d at 1266 (quoting 47 U.S.C. § 230(a)(3)-(4)). This Court has also recognized that the activity Meta engages in through Facebook and Instagram, two of the world's largest social media platforms—namely, publishing third-party user-generated content to billions of people, and developing new technological tools to facilitate those social interactions—is precisely the type of conduct that Section 230's operative provisions and stated policy goals are designed to protect. *See Carafano*, 339 F.3d at 1122; *Force v. Facebook, Inc.*, 934 F.3d 53, 65 (2d Cir. 2019) (Facebook's dissemination and moderation of third-party content "falls within the heartland of what it means to be the 'publisher' of information under Section 230(c)(1)," and holding it liable for "arranging and distributing third-party information" would "eviscerate" the statute).

The majority of other circuits to consider this issue are aligned with this Court that Section 230 confers immunity from suit. *See Klayman v. Zuckerberg*, 753 F.3d 1354, 1355, 1360 (D.C. Cir. 2014) (affirming dismissal of complaint alleging harmful third-party content, holding that Section 230 "shielded Zuckerberg and Facebook *from suit*" and that its statutory language evinces an

intent by Congress to "immunize[] *from suit*" certain publishing activities (emphases added)); *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 407, 417 (6th Cir. 2014) (finding that Section 230 "is an immunity *from suit rather than a mere defense to liability*" which "[a]t its core, . . . *bars lawsuits* seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions" (emphases added) (internal citations omitted)); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (affirming dismissal at pleadings stage and analogizing Section 230 to qualified immunity as "an immunity *from suit rather than* a mere defense to liability" that is "effectively lost if a case is erroneously permitted to go to trial" (emphasis added) (internal citations omitted)).

### 2. *The District Court Erred by Allowing Plaintiffs to Plead Around Section 230 Immunity from Suit*

Plaintiffs cannot plead around this broad immunity from suit by challenging the same protected publishing activities under the guise of a different legal theory. Section 230 immunity bars claims relating to the protected features regardless of how the cause of action is framed: "[A] plaintiff cannot sue someone for publishing third-party content simply by changing the name of the theory." *Barnes*, 570 F. 3d at 1101-03. This Court has rejected failure to warn claims asserted alongside negligent design claims that are barred by Section 230, emphasizing that plaintiffs cannot "plead around [Section 230]'s strictures."

33

*Bride*, 112 F.4th at 1176, 1180; *see also Wozniak v. YouTube, LLC*, 100 Cal. App. 5th 893, 914-15 (2024), *as modified on denial of reh'g* (Apr. 2, 2024) (Section 230 "is an exception" to the basic duty of care and "tort duty to warn," and holding otherwise "would allow essentially every state cause of action otherwise immunized by section 230 to be pleaded as a failure to warn."); *see also infra* Section II.B.

Having correctly determined that the features at issue constitute publishing activity (*see supra* Section I.A), that should have ended the inquiry as to all claims based on those features. Instead, the district court erred by permitting plaintiffs to assert their claims under a different theory based on the same activity. That ruling impermissibly allowed plaintiffs to circumvent the broad immunity from suit that Section 230 confers on Meta. Indeed, the district court acknowledged that it "must determine ultimately, 'at root,' whether [plaintiffs'] failure-to-warn theory seeks to treat Meta as a publisher." 1-ER-81 (October 15, 2024 MTD Order). But the district court concluded that some claims relating to the features at issue, which it found "are insulated by Section 230," *id.* at 83, treat Meta as a publisher, while the failure to warn claims, which relate to those same "insulated" features, do not.

Permitting failure to warn claims to proceed based on publishing activity that the statute protects would create an exception to statutory immunity from suit that would swallow the rule. *See Bride*, 112 F.4th at 1178-82 (finding, after

34

"engag[ing] in a careful inquiry into the fundamental duty invoked by the plaintiff," that when product liability claims for design defect and negligence were barred by Section 230, the failure to warn claims were equally barred because they stemmed from the same alleged risks); *Herrick v. Grindr LLC*, 765 F. App'x 586, 589-91 (2d Cir. 2019) (after concluding Section 230 barred the plaintiff's design defect claims, dismissing failure to warn claims that were "inextricably linked" to the same underlying publishing activity); *In re Facebook, Inc.*, 625 S.W.3d 80, 93-95 (Tex. 2021) (rejecting claims which plaintiffs "phrased in terms of Facebook's omissions" which would "in reality" hold Facebook liable for publishing activity, finding such claims barred by Section 230 whether "couched as failure to warn, negligence, or some other tort of omission").

As this Court has held, what matters for Section 230 immunity "is not the name of the cause of action," but "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F. 3d at 1101-02; *see also Kimzey*, 836 F.3d at 1265-66 ("creative pleading" cannot circumvent Section 230). Because the failure to warn claims seek to hold Meta liable for not warning about the alleged dangers of features that the district court correctly held constitute Meta's publishing activity, the district court erred in not dismissing them.

35

**II.    This Court's Section 230 Precedent Requires Dismissal of the Failure to Warn Claims**

Plaintiffs' failure to warn claims with respect to the publishing tools at issue in this appeal should have been dismissed irrespective of the district court's dismissal of other claims because—even if analyzed in isolation—the failure to warn claims seek to treat Meta as a publisher.  *See Barnes*, 570 F.3d at 1101-02 (Section 230 precludes claims that "inherently require[] the court to treat the defendant as the 'publisher or speaker' of content provided by another").  Moreover, plaintiffs' failure to warn claims ultimately hinge on harms stemming from third-party user content on Meta's platforms.  As this Court's recent precedents in *Bride* and *Grindr* confirm, those claims must therefore be dismissed for these additional reasons.

**A.    Plaintiffs' Failure to Warn Claims Seek to Treat Meta As a Publisher of Third-Party Content**

Meta cannot be held liable under a failure to warn theory that is based on the use of publishing tools and features on its platform.  That is because seeking to hold Meta liable for failing to warn users of alleged risks of harm relating to publishing activity falls squarely within the scope of Section 230.  Plaintiffs cannot save their failure to warn claims by alleging that the harm flows from purportedly harmful publishing tools, rather than from underlying third-party content.  As this Court emphasized in *Barnes*, the pertinent inquiry here is whether the "*duty*" that

36

plaintiffs allege Meta violated "derives from [its] *status or conduct* as a 'publisher.'" 570 F.3d at 1107 (emphases added). Here, plaintiffs allege Meta has a duty to protect users from harm allegedly flowing from its publishing features. In doing so, plaintiffs unequivocally seek to hold Meta liable *as a publisher* in direct contravention of Section 230.

"No website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content." *Dyroff*, 934 F.3d at 1101. Put simply, if the duty allegedly violated "stem[s] from the platform's status as a publisher . . . it is barred by § 230." *Bride*, 112 F.4th at 1177. Yet this is exactly what plaintiffs' claims attempt to impose on Meta here: a duty to warn users of a possibility of harm allegedly arising from the publishing tools by which Meta chooses to disseminate third-party content. This Court has made clear that liability based on Meta's role as a publisher is "explicitly foreclosed by § 230(c)(1)." *Id*.

The district court erred in suggesting that this Court's ruling in *Doe v. Internet Brands*, 824 F.3d 846 (9th Cir. 2016), may save plaintiffs' claims here. *See* 1-ER-81 (October 15, 2024 MTD Order). In *Internet Brands*, the defendant modeling website learned from outside sources of a specific criminal conspiracy by two men who were contacting women with ads posted on the website, luring them to fake auditions, and raping them. 824 F.3d at 848. Under these unique

37

circumstances, where there was "no allegation that [the rapists] posted their own profiles on the website," this Court held that Doe's failure to warn claim did not treat Internet Brands as a publisher or speaker of user content. *Id*. at 852; *see also Calise v. Meta*, 103 F.4th 732, 741 (9th Cir. 2024) (acknowledging that duty to warn of discovered rape scheme in *Internet Brands* "did not . . . seek to hold Internet Brands liable as the publisher" of third-party content).

This Court emphasized in *Bride* that the duty to warn claim in *Internet Brands* was allowed under Section 230 only because it "had *no bearing on* [the defendant]'s *decision to publish any information on its site*." *Bride*, 112 F.4th at 1180-81 (emphases added). The alleged harms were caused not by the publication of *any* third-party content on the site, but rather by Internet Brands' failure to warn "of a known conspiracy operating *independent of the site's publishing function*." *Id*. (emphasis added); *compare with Grindr*, 128 F.4th at 1154 (Section 230 barred Doe's claims where she did "not allege that Grindr had independent knowledge of a conspiracy," and Grindr owed no duty to warn users of a "general possibility of harm" caused by using the app (quoting *Bride*, 112 F.4th at 1181)).

A failure to warn claim thus might survive where, as in *Internet Brands*, "[t]he tort duty asserted . . . *does not arise* from an alleged failure to *adequately regulate access* to user content." 824 F.3d at 853 (emphases added). But *Internet Brands* is "best read as holding that" Section 230 *does* immunize failure to warn

38

claims which, like plaintiffs' claims, "depend[] on a close connection between the proposed warning and user-generated content." *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 592 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019). The claims plaintiffs assert against Meta implicate Meta's alleged failure to adequately regulate, via warning, how its users access third-party content on its sites. But an alleged duty to warn of purportedly harmful effects of the publication of content on Meta's platforms cannot stand under Section 230.

The district court's comparison of this case to *Lemmon v. Snap* with respect to plaintiffs' failure to warn claims is also inapt. *See* 1-ER-143 (October 15, 2024 MTD Order) (citing 5-ER-938-39, 5-ER-942 (November 14, 2023 MTD Order) (discussing *Lemmon*)). In that case, unlike here, the challenged conduct was "fully independent of [the defendant's] role in . . . publishing third-party content." *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1093 (9th Cir. 2021). *Lemmon* involved a "speed filter" on the Snapchat app that allegedly encouraged users to drive too fast—*whether or not* they posted or viewed content applying the filter. *Id*. at 1087, 1093-94. This Court held that the features allegedly incentivizing users to drive at unsafe speeds gave rise to "a clear example of a claim that simply *does not rest on third-party content*" and could thus be the basis of a lawsuit—but emphasized that plaintiffs "would *not* be permitted under § 230(c)(1) to fault Snap for *publishing* other Snapchat-user content . . . that may have incentivized the . . . [same]

39

dangerous behavior." *Id*. at 1093 & 1093 n.4 (emphases added). The claim in

*Lemmon* that was deemed not barred by Section 230 "sought to hold Snap liable

for creating the Speed Filter as a product in the first place . . . and not [for] Snap's

role as the publisher of any message." *Doe (K.B.)*, 2025 WL 719080, at *5 (citing

*Lemmon*, 995 F.3d at 1092); *see also Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 930

(N.D. Cal. 2021) (product liability claim barred by Section 230 because the harm

that flowed from the alleged design flaw was "directly related to the posting of

third-party content on Twitter" and thus distinguishable from *Lemmon*). Because

every feature at issue in this appeal involves publication of third-party content,

*Lemmon* is inapposite, and plaintiffs cannot rely on it to evade Section 230.

### B. This Court Has Consistently and Recently Held That Failure to Warn Claims Like Plaintiffs' Are Barred by Section 230

This Court and others have repeatedly dismissed failure to warn theories of

liability (similar to those of the plaintiffs) as barred by Section 230 immunity. *See*

*In re Facebook*, 625 S.W.3d at 93-95 (noting the then-"unanimous view of other

courts" that Section 230 bars claims predicated on failure to warn of Section 230-

protected publishing activity). The most recent examples are this Court's decisions

in *Bride* and *Grindr*, which include dismissals of claims for failure to warn of an

allegedly harmful design feature—confirming Section 230's applicability to failure

to warn claims targeting publishing activity is no longer in "flux," 1-ER-83-84

(October 15, 2024 MTD Order), to the extent it ever was. Here, plaintiffs allege

40

only harm that is not uniquely dangerous or specific to Meta and that cannot be

disambiguated from Meta's role as a publisher and the tools by which it makes

third-party content available to users—grounds on which courts including this

Court have rejected failure to warn claims under Section 230.

    1.   *Dismissal Is Required Because the Claims Seek to Hold Meta Liable for Harm Allegedly Arising from the Means by Which It Makes Third-Party Content Available to Users*

The case law in this Circuit and other courts interpreting Section 230 makes

clear that a platform cannot be liable for failing to warn users about "tools meant to

facilitate the communication and content of others," if it cannot be liable for design

defect claims based on a theory that use of such tools creates harm. *Dyroff*, 934

F.3d at 1097-98, 1100-01 (dismissing failure to warn claim after dismissing design

defect claims that challenged protected publishing functions, finding Section 230

barred both theories and rejecting the "misguided premise that misfeasance by [the

defendant] created a duty to [the plaintiff]"). Here, plaintiffs' failure to warn

claims are simply an attempt to impose on Meta a duty to warn users that the

consumption of third-party content of a certain type or published by Meta in a

certain manner may be harmful—precisely the type of claim that this Court

recently held in both *Bride* and *Grindr* is barred by Section 230.

This Court's decision in *Bride* compels dismissal of the failure to warn

claims. In that case, minors who experienced bullying and harassment, and the

parent of one who died by suicide, sued YOLO Technologies, which had developed an extension app for use with the Snapchat messaging app that enabled users to ask public questions and receive anonymous responses. *Bride*, 112 F.4th at 1172. Plaintiffs asserted claims for negligent design and failure to warn, alleging that YOLO's app, which was "[m]arketed mainly toward teenagers," was "inherently dangerous" because of its anonymous nature and that the app developer should have warned users about that danger. *Id*. at 1173-74. This Court rejected the plaintiffs' negligent design claim *and* failure to warn claim for the same reason: The attempt to hold YOLO liable for creating an app with "unreasonable" risk of harm, and for failing to warn about that harm, was merely another way to hold YOLO liable for the harmful effects of content on the app. *Id*. at 1180. Recognizing that the anonymity was intended to "encourag[e] . . . the sharing of messages between users"—which was part of YOLO's publishing function—this Court held that the plaintiffs could not "plead around [Section 230]'s strictures" and that Section 230 precluded liability on *all* of the claims. *Id*. at 1176, 1180.

Even more recently, in *Grindr*, this Court similarly dismissed a plaintiff's failure to warn claims after finding his design defect claims were barred by Section 230. 128 F.4th at 1154. Because the design defect claims were premised on Doe's use of "'features and functions' of Grindr that were 'meant to facilitate the communication and content of others,' and [which] were 'content neutral' on their

own," they "necessarily implicate[d] Grindr's role as a publisher of third-party content." *Id.* at 1152-53 (quoting *Dyroff*, 934 F.3d at 1098, 1100). Distinguishing the case from *Internet Brands* because "Doe [did] not allege that Grindr had independent knowledge of a conspiracy," this Court held that the failure to warn claims were also barred because an interactive computer service provider's "role as a publisher of third-party content does not give it a duty to warn users of 'a general possibility of harm' resulting from the [platform]." *Id.* at 1154 (quoting *Bride*, 112 F.4th at 1181).

Other circuits, district courts in this Circuit, and state courts have applied similar reasoning in finding failure to warn claims barred by Section 230. In *In re Facebook*, the Texas Supreme Court dismissed product liability claims asserted against Facebook as immunized under Section 230, including those based on its alleged failure to warn that sex traffickers may be soliciting on its website. 625 S.W.3d 80. The court characterized the "warnings" sought by the plaintiffs as activity that "courts have consistently viewed as [that] of a 'publisher' for purposes of Section 230." *Id.* at 93. It rejected the plaintiffs' argument—similar to the one that plaintiffs make here against Meta—that the failure to warn claims did not treat Facebook as a publisher because they sought only to hold it liable for its own "failure to implement any measures to protect [users]" from "the dangers posed by its products." *Id.* (quotation marks omitted). Instead, the court concluded that,

although "indirect," the liability sought ultimately flowed from Facebook's dissemination of content.  *Id*. (citing *Herrick*, 306 F. Supp. 3d at 591).[8]

In similar cases, district courts have frequently found that claims based on a defendant's failure to warn users of risks that are inherent to misuse of its platform (such as sexual exploitation or fraud) are immunized under Section 230.  *See, e.g.*, *Grindr*, 709 F. Supp. 3d at 1053-54 (dismissing failure to warn claims based on allegation that features such as geolocation sharing and user-matching tools were defectively designed to facilitate the connection of minors with sexual predators); *Doe (K.B.)*, 2025 WL 719080, at *7 (dismissing claims based on a "failure to warn of the generalized risk of sex trafficking content on [Meta's] platform, and the use of fake accounts that might facilitate that content"); *Doe v. Grindr, LLC*, No. 5:23-cv-193-JA-PRL, 2023 WL 7053471, at *2 (M.D. Fla. Oct. 26, 2023) (rejecting claim by parent of minor who met an adult man for sex through Grindr based on the app's failure to warn users of the known risk of sexual abuse to minors); *L.W.*, 675 F. Supp. 3d at 1100 (similar); *Diep v. Apple, Inc.*, No. 21-cv-10063-PJH, 2022 WL 4021776, at *6 (N.D. Cal. Sept. 2, 2022) (dismissing consumer protection claims based in part on Apple's alleged failure to warn users about the dangers of a

---

[8] "The fact that the proposed warning would potentially operate at a general level, rather than be appended to specific posts, is not significant.  Section 230 applies at both the individual and systemic or architectural level."  *Herrick*, 306 F. Supp. 3d at 591-92.

fraudulent app offered on its app store); *Riggs v. MySpace, Inc.*, No. CV 09-03073-GHK (CTx), 2009 WL 10671689, at *2 (C.D. Cal. Sept. 17, 2009) (dismissing the plaintiff's gross negligence claim premised in part on the defendant's alleged failure to warn the public of the potential existence of fake profiles on its website).

In a recent decision involving some of the same defendants in this action, a Connecticut court dismissed claims brought by a minor who was raped by another user she met through Snapchat. *V.V. v. Meta Platforms, Inc.*, Doc No. X06-UWY-CV-23-5032685-S, 2024 WL 678248 (Conn. Super. Ct. Feb. 16, 2024). The minor plaintiff alleged that various features of the platform made it appealing for sexual predators (e.g., "Quick Add") and addicting to teen users (e.g., "Streaks"). *Id*. at *1. The court found that all the claims were barred and fell "squarely within the ambit of [Section 230] immunity"—including claims, similar to those against Meta in this action, that Snap failed to warn users or parents of the platform's "addictive design defects" and "actively concealed" its knowledge of the fact that its features "facilitate[d] young people to become addicted to the application and maximize[d] the number of viewing sessions." *Id*. at *1, *11.

> ### 2. Dismissal Is Also Required Because the Claims Seek to Hold Meta Liable for a General Possibility of Harm That Exists Everywhere on the Internet

As this Court emphasized just last month, an interactive computer service provider's "role as a publisher of third-party content does not give it a duty to warn

users of 'a general possibility of harm' resulting from the [platform]." *Grindr*, 128 F.4th at 1154 (quoting *Bride*, 112 F.4th at 1181). In *Bride*, this Court propounded the common-sense principle that a defendant cannot be sued for failure to warn absent allegations that the provider's features are "uniquely or unreasonably dangerous." 112 F.4th at 1180-82. Here, to the extent plaintiffs allege a theory that is at best "merely a general possibility of harm resulting from use of" Meta's platforms "which largely exists anywhere on the internet," and may be experienced by young users of *any* website, including social media sites—i.e., they are "problem[s] which beset[] the entire internet." *Id*. The district court's ruling opens the door for Meta to face liability for "behavior[] that is not unique to" a particular website or platform, which would only serve to unfairly punish Meta "for the unfortunate realities of human nature." *Id*.

This Court should follow its own recent precedent, which aligns with the overwhelming consensus of federal and state courts nationwide, to uphold the very purpose of Section 230's immunity—protecting providers like Meta from facing suit in connection with features that facilitate the publication of third-party content.

### C. The Decision Whether to Warn About Third-Party Content Is Also Itself a Form of Publishing Activity

In addition to the fact that the failure to warn theory is based on features that constitute publishing activity, Meta's decision about whether to warn about third-

party content it publishes on its platforms is *itself* publishing activity within the scope of Section 230.

Unlike the regulatory schemes that govern other industries,[9] Congress has not imposed warning requirements on social media platforms through legislation. Rather, Section 230 remains the law of the land. And as courts have recognized, a provider's policies around attaching warnings to its publication of third-party content fall under the broad auspices of the Section 230 immunity Congress intended to create. *See Herrick*, 306 F. Supp. 3d at 592 & n.8 ("[A] warning about third-party content is a form of editing, just as much as a disclaimer printed at the

---

[9] Various industries whose products by nature may pose certain risks to consumers are subject to warning requirements enacted by Congress or promulgated by regulatory agencies. *See, e.g.*, 15 U.S.C. § 1333 (mandating warnings that must appear on cigarette packaging); 27 U.S.C. § 215(b) (same, for alcohol); 15 U.S.C. § 1261 (same, for hazardous household substances); 21 C.F.R. § 801.430 (same, for tampon packaging); 21 C.F.R. § 201.56(d)(1) (same, for drug labels). Imposing warning requirements on social media platforms would raise First Amendment issues not present in other industries. *See, e.g.*, *Moody*, 603 U.S. at 740 ("When [social media platforms] decide which third-party content [their] feeds will display, or how the display will be ordered and organized, they are making expressive choices" that "receive First Amendment protection"); *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186-87 (N.D. Cal. 2022) ("Twitter makes decisions about what content to include, exclude, moderate, filter, label, restrict, or promote, and those decisions are protected by the First Amendment."), *aff'd sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023); *see also Bill v. Superior Court*, 137 Cal. App. 3d 1002 (1982) (applying the First Amendment to preclude a claim brought against producers of a film based on an alleged failure to warn filmgoers about the likelihood "that violence might occur at or near theaters showing the film," including because of the potential "chilling effect" resulting from imposing liability for failure to warn).

top of a page of classified ads in a newspaper would be."); *Backpage.com, LLC*, 817 F.3d at 21 (extending Section 230(c)(1) immunity to "the formulation of . . . website policies and practices" that "reflect choices about what content can appear on the website *and in what form*" (emphasis added)); *In re Facebook*, 625 S.W.3d at 93-94 & 94 n.9 ("Facebook's decision not to combat potentially harmful communication 'by changing its web site policies' on warnings . . . 'was as much an editorial decision' regarding third-party content 'as a decision not to delete a particular posting.'" (quoting *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 422 (1st Cir. 2007))); *cf. Moody*, 603 U.S. at 735, 739 (describing social media platforms' decisions about "which posts to … label" as "the platforms' editorial decisions," where "labels" includes "attach[ing] warning[s], disclaimers, or general commentary" to third-party content (quotation marks omitted)).

Moreover, it is well established that the purpose of imposing a warning requirement is to decrease use of the thing warned of.  *See, e.g.*, *Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 531 (6th Cir. 2012) (the "purpose of the [warning] labels" required on tobacco products was "to decrease 'the use of tobacco by young people'" (quoting regulation at issue)); *Salinas v. Amteck of Ky., Inc.*, 682 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (warning requirement's "purpose is to inform consumers about a product's hazards and faults of which they are unaware, so that they can refrain from using the product

altogether or evade the danger by careful use.").  Requiring warnings would restrict Meta's ability to disseminate third-party content through publishing tools for which Meta cannot be held liable, thereby conflicting with the language of Section 230 and the fact that Congress has not imposed warning requirements.  *See Pinckney*, 127 F.4th at 526 (recognizing that a publisher "does not cease to be a publisher simply because it prioritizes engagement in sorting its content").

## CONCLUSION

For the foregoing reasons, Meta respectfully requests that this Court reverse the district court's order to the extent it denied Meta's motion to dismiss plaintiffs' failure to warn claims with respect to the features at issue in this appeal.

Dated: March 31, 2025

Respectfully submitted,

*/s/ James P. Rouhandeh*
James P. Rouhandeh (*pro hac vice*)
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Email: rouhandeh@davispolk.com

Paul W. Schmidt (*pro hac vice*)
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Email: pschmidt@cov.com

*Attorneys for Defendants-Appellants*
*Meta Platforms, Inc. f/k/a Facebook,*
*Inc.; Meta Payments Inc.; Meta*
*Platforms Technologies, LLC f/k/a*
*Facebook Technologies, LLC;*
*Facebook Holdings, LLC; Facebook*
*Operations, LLC; Facebook*
*Payments, Inc.; Instagram, LLC; and*
*Siculus, Inc.*

**STATEMENT OF RELATED CASES**

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

The following related case is pending in this Court, which "arise[s] out of

the same or consolidated cases in the district court," 9th Cir. R. 28-2.6:

*People of the State of California v. United States District Court of
California, Oakland*, No. 25-584

## CERTIFICATE OF COMPLIANCE

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)**: Nos. 24-7032, 24-7037, 24-7300, 24-7304, 24-7312, 24-7265

I am the attorney or self-represented party.

**This brief contains 11,623 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** */s/ James P. Rouhandeh*    **Date** March 31, 2025
*(use "s/[typed name]" to sign electronically-filed documents)*