**24-7032, 24-7037, 24-7300, 24-7304, 24-7312, 24-7265**

IN THE

# United States Court of Appeals

## FOR THE NINTH CIRCUIT

◆◆

PEOPLE OF THE STATE OF CALIFORNIA; *et al.*,

*Plaintiffs-Appellees,*

—and—

STATE OF NORTH DAKOTA, and STATE OF GEORGIA,

*Plaintiffs,*

—v.—

META PLATFORMS, INC.; *et al.*,

*Defendants-Appellants.*

and Consolidated Cases

———

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION
HON. YVONNE GONZALEZ ROGERS, DISTRICT JUDGE
CASE NO. 4:23-CV-05448 (MDL NO. 3047)
CASE NO. 4:22-MD-03047 (MDL NO. 3047)

---

## META DEFENDANTS-APPELLANTS'
## REPLY AND RESPONSE BRIEF

---

PAUL W. SCHMIDT
  (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
pschmidt@cov.com

JAMES P. ROUHANDEH
  (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
rouhandeh@davispolk.com

*Attorneys for Defendants-Appellants*
*Meta Platforms, Inc. f/k/a Facebook, Inc.; Meta Payments Inc.;*
*Meta Platforms Technologies, LLC f/k/a Facebook Technologies, LLC;*
*Facebook Holdings, LLC; Facebook Operations, LLC;*
*Facebook Payments, Inc.; Instagram, LLC; and Siculus, Inc.*

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................1

SUMMARY OF THE ARGUMENT ......................................................3

ARGUMENT ...........................................................................................6

I.   This Court Has Jurisdiction Over Meta's Appeal Under the Collateral Order Doctrine.............................................................................6

    A.   Section 230 Provides Immunity from Suit.......................................7

        1.   The Plain Text of Section 230 Provides for Immunity from Suit ...................................................................................7

        2.   This Court's Precedent and Decisions of Other Courts Confirm That Section 230 Provides for Immunity from Suit..12

    B.   Meta's Appeal Satisfies All Three Prongs of the Collateral Order Doctrine .............................................................................16

        1.   The Failure to Warn Rulings Are Conclusive ........................17

        2.   The Immunity from Suit Question on Appeal Is Separate from the Merits of Plaintiffs' Failure to Warn Claims ...........18

        3.   The Failure to Warn Rulings Would Be Effectively Unreviewable After Final Judgment........................................19

II.  The District Court Erred by Forcing Meta to Litigate Failure to Warn Claims from Which It Is Immune Under Section 230 ...........................23

    A.   The Failure to Warn Claims Should Be Dismissed Because They Are Based on Publishing Conduct Protected by Section 230........23

    B.   Plaintiffs Fail to Identify an Independent Duty Giving Rise to a Failure to Warn Claim, As Required by This Court's Most Recent Rulings ...........................................................................28

i

C.     The District Court Erred When It Permitted Plaintiffs to Plead Around Section 230 Immunity from Suit ........................................33

D.     Plaintiffs' Construction of Section 230 Immunity Is Impermissibly Narrow and Contravenes Binding Authority.........36

E.     Plaintiffs' Assertion That Their Claims Have "Nothing to Do" with Meta's Publication of Third-Party Content Is Belied by Their Complaints............................................................................41

F.     Meta's Motions to Dismiss Do Not Seek to Strike Factual Allegations ...................................................................................43

G.     Plaintiffs' Attempts to Limit the Scope of Meta's Appeal Are Improper ..........................................................................................46

III.   Plaintiffs' Purported Cross-Appeals Should Be Dismissed or, in the Alternative, Denied ............................................................................48

A.     This Court Lacks Jurisdiction Over Plaintiffs' Cross-Appeals .....49

1.     It Is Undisputed That There Is No Independent Basis to Exercise Jurisdiction Over the Cross-Appeals ......................49

2.     There Is No Pendent Appellate Jurisdiction Over the Cross-Appeals...............................................................................49

3.     To the Extent This Court Chooses to Review Any Aspect of the October 2024 Orders to Resolve Meta's Appeal, It May Do So Absent Any Cross-Appeal ............................................53

B.     If the Court Exercises Pendent Appellate Jurisdiction Over Plaintiffs' Cross-Appeals, the Court Should Affirm the District Court's Dismissal of the Claims Relating to the Platform Features at Issue as Barred by Section 230....................................54

CONCLUSION ........................................................................................55

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................ 17

*Atkinson v. Meta Platforms, Inc.*,
2021 WL 5447022 (9th Cir. Nov. 22, 2021) ............................... 19, 25

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir.),
*as amended* (Sept. 28, 2009) ............... 4, 10-11, 23-24, 25, 26, 34, 35, 37-38, 39

*BBL, Inc. v. City of Angola*,
809 F.3d 317 (7th Cir. 2015) ............................................................ 45

*Beckman v. Match.com, LLC*,
668 F. App'x 759 (9th Cir. 2016) ..................................................... 25

*Behrens v. Pelletier*,
516 U.S. 299 (1996) ......................................................................... 17

*Black v. Dixie Consumer Prods. LLC*,
835 F.3d 579 (6th Cir. 2016) ............................................................ 22

*Bradley v. Fisher*,
80 U.S. 335 (1871) ........................................................................... 40

*Buckley v. Fitzsimmons*,
509 U.S. 259 (1993) ..................................................................... 39-40

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) ................................... 25, 26, 29, 35, 38

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ........................... 10, 12, 15, 19, 20, 21

*Childs v. San Diego Family Hous. LLC*,
22 F.4th 1092 (9th Cir. 2022) ...................................................... 21-22

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949) ........................................................................... 6

*Cunningham v. Gates*,
229 F.3d 1271 (9th Cir.), *as amended* (Oct. 31, 2000) ...................................... 50

*DC Comics v. Pac. Pictures Corp.*,
706 F.3d 1009 (9th Cir. 2013) ..................................................... 16, 22

*Diep v. Apple, Inc.*,
2024 WL 1299995 (9th Cir. Mar. 27, 2024) .................................. 25

*Digit. Equip. Corp. v. Desktop Direct, Inc.*,
511 U.S. 863 (1994) ....................................................... 11

*Doe v. Grindr Inc.*,
128 F.4th 1148 (9th Cir. 2025)
*petition for cert. filed*,
No. 24-1202 (U.S. May 23, 2025)................................. 25, 29, 30, 31, 32, 38, 43

*Doe v. Internet Brands, Inc.*,
824 F.3d 846 (9th Cir. 2016) ....................................... 31, 38

*Doe (K.B.) v. Backpage.com, LLC*,
768 F. Supp. 3d 1057 (N.D. Cal. 2025) ........................... 13

*Dominguez v. Better Mortg. Corp.*,
88 F.4th 782 (9th Cir. 2023) ............................................ 50

*Dyroff v. Ultimate Software Grp., Inc.*,
934 F.3d 1093 (9th Cir. 2019) ................................. 25, 30, 41-42, 43

*E. Bay Sanctuary Covenant v. Garland*,
994 F.3d 962 (9th Cir. 2020) ............................................ 8

*Est. of Bride by & through Bride v. Yolo Techs., Inc.*,
112 F.4th 1168 (9th Cir. 2024),
*cert. denied sub nom. Est. of Bride v. Yolo Techs., Inc.*,
145 S. Ct. 1435 (2025) ........................ 4-5, 23, 24, 25, 28-29, 30, 31, 32, 33, 42

*Est. of Saunders v. Comm'r*,
745 F.3d 953 (9th Cir. 2014) ........................................... 8

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) (en banc) ...................... 12, 13, 15, 19

*Gen. Steel Domestic Sales, L.L.C. v. Chumley*,
840 F.3d 1178 (10th Cir. 2016) ...................................... 15

iv

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
485 U.S. 271 (1988) ................................................................. 17, 18

*Hall v. YouTube, LLC*,
2025 WL 1482007 (N.D. Cal. May 5, 2025) ................................... 31

*Hampton v. California*,
83 F.4th 754 (9th Cir. 2023),
*cert. denied sub nom. Diaz v. Polanco*,
144 S. Ct. 2520 (2024) ...................................................... 17, 18, 19

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
530 U.S. 1 (2000) .......................................................................... 9

*Herrick v. Grindr, LLC*,
306 F. Supp. 3d 579 (S.D.N.Y. 2018),
*aff'd*, 765 F. App'x 586 (2d Cir. 2019) ...................................... 31, 32

*Herrick v. Grindr, LLC*,
765 F. App'x 586 (2d Cir. 2019)..................................................... 25

*Hibbs v. Winn*,
542 U.S. 88 (2004) ........................................................................ 8

*Hightower v. JPMorgan Chase Bank, N.A.*,
2012 WL 12878311 (C.D. Cal. Sept. 12, 2012) ............................. 46

*HomeAway.com, Inc. v. City of Santa Monica*,
918 F.3d 676 (9th Cir. 2019) ....................................................... 26

*Hunter v. Bryant*,
502 U.S. 224 (1991) ...................................................................... 7

*John Doe 1 v. Twitter, Inc.*,
2025 WL 2178534 (9th Cir. Aug. 1, 2025) .................................... 25

Order, *Jones v. Dirty World Entm't Recordings LLC*,
No. 12-5133 (6th Cir. May 9, 2012) .............................................. 16

*Jones v. Dirty World Entm't Recordings LLC*,
755 F.3d 398 (6th Cir. 2014) ....................................................... 16

*Kimzey v. Yelp!, Inc.*,
836 F.3d 1263 (9th Cir. 2016) ............................................ 20-21, 43

v

*K.W. ex rel. D.W. v. Armstrong*,
    789 F.3d 962 (9th Cir. 2015) .............................................................. 51

*Lemmon v. Snap, Inc.*,
    995 F.3d 1085 (9th Cir. 2021) ........................................ 25, 29, 32, 38

*Meredith v. Oregon*,
    321 F.3d 807 (9th Cir. 2003) .............................................................. 51

*Midland Asphalt v. United States*,
    489 U.S. 794 (1989) ........................................................................... 11

*Milstein v. Cooley*,
    257 F.3d 1004 (9th Cir. 2001) ........................................................... 44

*Mireles v. Waco*,
    502 U.S. 9 (1991) ............................................................................... 40

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009) ..................................................................... 18, 19

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985) ................................................................. 7, 16, 20

*M.P. by & through Pinckney v. Meta Platforms Inc.*,
    127 F.4th 516 (4th Cir. 2025),
    *petition for cert. filed*, No. 24-1133 (U.S. May 2, 2025) ...................... 27, 39, 41

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ............................................................... 7

*Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*,
    711 F.3d 1136 (9th Cir. 2013) ........................................................... 13

*Pistor v. Garcia*,
    791 F.3d 1104 (9th Cir. 2015) ........................................................... 14

*Planet Green Cartridges, Inc. v. Amazon.com, Inc.*,
    2025 WL 869209 (9th Cir. Mar. 20, 2025) ....................................... 44

*Poulos v. Caesars World, Inc.*,
    379 F.3d 654 (9th Cir. 2004) ....................................................... 51, 52

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993) ..................................................................... 17, 18

*Republican Nat'l Comm. v. Google, Inc.*,
  2023 WL 5487311 (E.D. Cal. Aug. 24, 2023) .................................................... 12

*Smith v. Substack, Inc.*,
  2024 WL 3757501 (N.D. Cal. Aug. 12, 2024) .................................................. 13

*Staley v. Gilead Scis., Inc.*,
  2020 WL 5507555 (N.D. Cal. July 29, 2020) ............................................ 44-45

*State of Cal., on Behalf of California Dep't of Toxic Substances Control v.
Campbell*,
  138 F.3d 772 (9th Cir. 1998) ................................................................... 52

*Swint v. Chambers Cty. Comm'n*,
  514 U.S. 35 (1995) .................................................................... 50, 52

*Thompson v. Runnels*,
  705 F.3d 1089 (9th Cir. 2013) ................................................................. 53

*Torres v. Goddard*,
  793 F.3d 1046 (9th Cir. 2015) ................................................................. 40

*United States v. Pangang Grp. Co.*,
  6 F.4th 946 (9th Cir. 2021) ................................................................... 11

*Will v. Hallock*,
  546 U.S. 345 (2006) .................................................................... 20, 21

*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) .............................................................. 26, 39

## Statutes & Rules

28 U.S.C. § 1291 .......................................................................... 49

47 U.S.C. § 230 ...................................................................... *passim*

47 U.S.C. § 230(a) ........................................................................ 21

47 U.S.C. § 230(b) .................................................................. 9, 20, 21

47 U.S.C. § 230(c)(1) ....................................................9, 10, 11, 19, 26, 39

47 U.S.C. § 230(e)(3) ................................................................ 8, 9, 10

## INTRODUCTION

The fundamental questions on this appeal are clear: whether Section 230 provides immunity from suit, as this Court (and other courts of appeals) repeatedly have held it does, and whether the challenged failure to warn claims are barred by Section 230 because they seek to hold Meta liable as a publisher of third-party content.

Plaintiffs brought design defect and failure to warn claims based on a series of publishing tools and features through which Meta arranges, presents, and disseminates a diverse array of user-generated content on its online services. Meta moved to dismiss plaintiffs' claims as barred by Section 230 because those claims sought to impose liability on Meta based on its status and conduct as a publisher of third-party content. The district court agreed when it dismissed plaintiffs' design defect claims based on features that it correctly held constitute publishing tools and activities that establish Meta's status *and* conduct as a publisher that are protected by Section 230. The district court declined, however, to dismiss failure to warn claims based on those very same publishing activities. As Meta's Opening Brief established, and as further addressed below, this was error because it denied Meta immunity from suit to which it is entitled under Section 230.

The denial of immunity from suit remains the key to this appeal, despite plaintiffs' attempt to cross-appeal and reverse the district court's correct decision

with respect to the design defect claims. In their response briefs, plaintiffs now go one step further and seek to sidestep Section 230 immunity by denying that they ever brought failure to warn claims (in the case of the State AGs), and by seeking to narrowly read the district court's rulings and Meta's appeal in an effort to limit this appeal to a single failure to warn claim theory based on "compulsive use," even though the district court's orders considered *all* failure to warn claims (in the case of the Personal Injury ("PI") and School District ("SD") plaintiffs).[1]

Plaintiffs cannot wordsmith their way out of Section 230 immunity from suit. Regardless of how plaintiffs frame their failure to warn claims on appeal, they cannot avoid the fact that the failure to warn claims the district court permitted to proceed are based on the identical publishing activities that the district court correctly held are protected by Section 230. The Ninth Circuit cases that have allowed failure to warn claims to go forward addressed claims where the duty was wholly *separate* from the defendant's role or activities as a publisher. This is not such a case. Any claim alleging that Meta failed to warn about purported harms stemming from its protected publishing activities necessarily seeks to hold Meta liable in its role and for its conduct as a publisher of third-party content and is therefore barred by Section 230 immunity.

---

[1] Capitalized and abbreviated terms shall have the same meaning as in Meta's Opening Brief unless otherwise defined herein.

## SUMMARY OF THE ARGUMENT

As Meta established in its Opening Brief, the district court erred in denying Meta immunity from suit. The challenged failure to warn claims that the district court allowed to go forward are based on the *identical publishing activities* that the district court correctly held were protected under Section 230 because they sought to hold Meta liable based on its status and conduct as a publisher.

In response, plaintiffs' briefs fail to show that (i) this Court lacks jurisdiction over Meta's appeal under the collateral order doctrine, (ii) the failure to warn claims at issue on this appeal should nevertheless survive Section 230 immunity from suit, or (iii) plaintiffs' conditional cross-appeals should be heard, much less granted. This Court should reverse the district court's challenged failure to warn rulings and deny or dismiss plaintiffs' cross-appeals.

*First*, this Court has jurisdiction over Meta's appeal under the collateral order doctrine. Because Section 230 is an immunity from suit—as the statute itself makes clear, and as the Ninth Circuit has repeatedly and long held—the district court's denial of Meta's motion to dismiss the failure to warn claims on Section 230 grounds is an immediately appealable order. Plaintiffs' assertion that this Court lacks jurisdiction because Section 230 immunity is merely a defense to liability, and not an immunity from suit, is contrary to the plain statutory text and this Court's clear precedent.

*Second*, on the merits of the appeal, Section 230 also compels reversal of the district court's failure to warn rulings. Section 230 bars all claims that seek to hold an interactive computer service provider liable for ***its status or conduct as a publisher of third-party content***, as plaintiffs' failure to warn claims do here. *See, e.g.*, *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009), *as amended* (Sept. 28, 2009) (crux of the analysis is "whether the duty that the plaintiff alleges the defendant violated derives from the defendant's *status or conduct as a 'publisher'*" (emphasis added)). As Meta's Opening Brief demonstrated, the publishing tools and features upon which plaintiffs' failure to warn claims are based are protected publishing activities under Section 230. All of the features at issue are ways that third-party content is presented or modified. This is classic publishing conduct. Plaintiffs' failure to warn claims are therefore barred by Section 230 immunity because they seek to hold Meta liable as a publisher for failing to warn *about* its own *publishing activities*.

Plaintiffs seek to narrow the scope of Section 230 to apply only to liability for harmful content, but that effort should be rejected because it is unsupported by—and conflicts with—the text of Section 230, as well as Ninth Circuit precedent. The only relevant question is whether the duty that Meta allegedly violated derives from its status or conduct as a publisher. *Est. of Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1176 (9th Cir. 2024), *cert.*

4

*denied sub nom. Est. of Bride v. Yolo Techs.*, *Inc.*, 145 S. Ct. 1435 (2025). That is necessarily the case here where the features at issue are publishing tools and activities that dictate whether, when, and how third-party content is presented or displayed, as the district court correctly held. 1-ER-15 (October 24, 2024 MTD Order) (citing 5-ER-943-946 (November 14, 2023 MTD Order)); 1-ER-72-76 (October 15, 2024 MTD Order) (citing 5-ER-943-946 (November 14, 2023 MTD Order)).

Plaintiffs attempt to skirt Section 230 by asserting that Meta's duty to warn arises from Meta's non-publishing conduct (which they refer to as Meta's "own conduct") rather than its publication of third-party content. This contention is both legally and logically defective. A website's decision about how to arrange and display third-party content could always be characterized as the website's "own conduct," but this Court has repeatedly held that those decisions are quintessential publishing activities that fall squarely within Section 230. And plaintiffs point to no Ninth Circuit authority allowing claims (like theirs) that target publishing activity to proceed in the face of a Section 230 challenge. Instead, plaintiffs rely solely on cases involving allegations of conduct and duties entirely separate from the defendant's role or activities as a publisher.

By allowing plaintiffs' failure to warn claims to proceed, while other claims based on identical publishing activities were properly dismissed, the district court erred by permitting plaintiffs to skirt the bounds of Section 230.

*Finally*, plaintiffs' conditional cross-appeals lack both a jurisdictional basis and any merit and should therefore be dismissed or, in the alternative, denied. Unlike Meta's appeal, which is properly before this Court under the collateral order doctrine because it concerns a denial of immunity from suit, the cross-appeals seek to reverse the grant of immunity, an improper basis for interlocutory appeal. Plaintiffs also fail to satisfy the stringent requirements of pendent appellate jurisdiction. Even if this Court were to find it has pendent jurisdiction over the cross-appeals, they should be denied. The district court correctly dismissed the claims that plaintiffs seek to appeal because they treat Meta as a publisher under Section 230.

## ARGUMENT

### I. This Court Has Jurisdiction Over Meta's Appeal Under the Collateral Order Doctrine

The district court's denial of Meta's motion to dismiss the failure to warn claims on Section 230 grounds is immediately appealable under the collateral order doctrine because, if left unreviewed, it would deprive Meta of immunity from suit that could not be vindicated on appeal from a final judgment. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). The collateral order

6

doctrine is tailor-made for cases involving the denial of immunity from suit. Where a district court denies a motion to dismiss state law claims despite the defendant's entitlement to an immunity from suit, such an order "easily meets the[] requirements" of the collateral order doctrine. *See Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985).

The question of immunity from suit should be resolved as early as possible. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."). Section 230 immunity is no different. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009) ("Section 230 immunity, like other forms of immunity, is generally accorded effect at the first logical point in the litigation process.").

Section 230 confers immunity from suit, as the plain language of the statute and decisions of this Court and others make clear. *See* Opening Br. at 26-33; Section I.A, *infra*. Immediate review of the denial of that immunity entirely aligns with the purpose of the collateral order doctrine.

**A.  Section 230 Provides Immunity from Suit**

1.  *The Plain Text of Section 230 Provides for Immunity from Suit*

Multiple provisions of Section 230 make clear that Section 230 provides immunity from suit *in addition to* a defense to liability. *See* Opening Br. at 26-29.

To start, the plain language of Section 230(e)(3) reflects Congress's intent to treat Internet providers differently than traditional publishers and receive broad immunity from *suit*, not merely immunity from liability. *See id.* at 28-29. It states in no uncertain terms: "*[n]o cause of action may be brought and* no liability may be imposed under any State . . . law that is inconsistent with this section." 47 U.S.C. § 230(e)(3) (emphasis added).

Plaintiffs' reading of the provision would read the first clause (i.e., "*[n]o cause of action may be brought . . .*")—and the "and" that follows it—out of the statute, violating the principle of statutory interpretation that "[a] statute should be construed so that . . . no part will be inoperative or superfluous, void or insignificant." *E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 978 (9th Cir. 2020) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)).[2] Plaintiffs contend that there is no superfluousness problem with interpreting Section 230(e)(3) as merely a preemption provision because "a cause of action may be brought without the imposition of liability—such as injunctive relief." *See* PI/SD Br. at 26 n.4. But

---

[2] The State AGs offer no response to Meta's plain language argument and therefore do not dispute it. *See* State AG Br. at 32-33. The PI/SD plaintiffs incorrectly assert that Meta waived the argument by asserting it only in a footnote. *See* PI/SD Br. at 26 n.4. The case plaintiffs cite, *Estate of Saunders v. Commissioner*, 745 F.3d 953 (9th Cir. 2014), is inapposite. Unlike in that case, Meta's statutory interpretation point was not a standalone ground for reversal relegated to a footnote, but is part and parcel of Meta's broader argument that Section 230(e)(3) works in combination with the statute's other provisions to provide immunity from suit.

injunctive relief requires a finding of liability, and if Congress had intended for Section 230(e)(3) to allow for injunctive relief or similar types of actions and preempt only damages actions, it could have explicitly done so. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000).

Other aspects of the text confirm that Section 230 provides immunity from suit in addition to a defense to liability. As this Court has held, when Section 230(b) is read together with 230(c)(1) and 230(e)(3), it is clear that Congress intended that the statute afford interactive computer service providers with immunity from suit. *See* Opening Br. at 28-29. Plaintiffs' argument that the statute's policy statement on its own does not confer immunity from suit (*see* State AG Br. at 34; PI/SD Br. at 24-25) changes nothing; Meta does not urge the Court to consider Section 230(b) in isolation, but rather in connection with the rest of the text, consistent with this Court's precedent. *See* Opening Br. at 28-29.

That courts, including this Court, have read Section 230(e)(3) as a preemption provision, *see* State AG Br. at 33; PI/SD Br. at 25, is entirely consistent with the text of the statute and this Court's precedent. *See* Opening Br. at 29 n.7. Immunity from suit and preemption of inconsistent state laws are not mutually exclusive, and plaintiffs cite no Ninth Circuit case suggesting that they are. The only case plaintiffs do cite for this assertion is an inapposite, nonbinding case from the Tenth Circuit. *See* State AG Br. at 33, PI/SD Br. at 25; *see also infra*

9

at 15.  Moreover, plaintiffs' assertion that Section 230(e)(3) is *solely* a preemption provision contravenes this Court's (and others') consistent and repeated interpretation of the statute, which has characterized Section 230 as providing immunity from suit.  *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) ("[W]e conclude that Congress intended that service providers . . . be afforded immunity from suit"); *see also* Opening Br. at 29-33 (citing decisions from this Court, as well as decisions of the Fourth, Sixth, and D.C. Circuits, characterizing Section 230 as conferring immunity from suit); Section I.A.2, *infra*.

The PI/SD plaintiffs also assert that interpreting Section 230(e)(3) as providing immunity from suit "would lead to the absurd result that internet companies enjoy absolute immunity from suits brought under *state* law but only a defense to suits under *federal* law," and because "[t]here's no reason to believe that Congress hid an extraordinary immunity in an ordinary preemption provision." PI/SD Br. at 26.  Both assertions misconstrue the statute and Meta's argument. Meta does not assert that the immunity from suit derives solely from Section 230(e)(3), but rather that the preemption language in Section 230(e)(3) reflects and confirms that Section 230, as a whole, confers immunity from suit.  *See* Opening Br. at 28-29; *Barnes*, 570 F.3d at 1100-01 (recognizing "Subsection 230(e)(3) makes explicit the relevance of th[e] definition" in Section 230(c)(1) and

evaluating the scope of Section 230(c)(1) by "[b]ringing these two subsections together").

Finally, plaintiffs incorrectly assert that Section 230 does not confer immunity from suit because the statute does not contain an "explicit guarantee that a trial will not occur." *See* State AG Br. at 32; PI/SD Br. at 24. Plaintiffs rely on *Midland Asphalt v. United States*, 489 U.S. 794, 801 (1989), but the Supreme Court later characterized that part of its decision as a suggestion rather than a requirement. *See Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 874-76 (1994) (discussing the immediate appealability of the denial of the "inexplicit" right to qualified immunity). Further, both the Supreme Court and this Court have indicated that *Midland Asphalt*'s directive is specific to a criminal defendant's "right not to be tried." *See, e.g.*, *id.* at 880; *United States v. Pangang Grp. Co., Ltd.*, 6 F.4th 946, 952 (9th Cir. 2021). Contrary to plaintiffs' contention that "[n]othing in the text of th[e] provision even suggests . . . a right to avoid litigation entirely," *see* PI/SD Br. at 24, not only does Section 230's plain text grant such a right, but, as set forth below and in Meta's Opening Brief, *see* Opening Br. at 29-32, this Court has repeatedly interpreted Section 230 to provide immunity from suit.

11

2. *This Court's Precedent and Decisions of Other Courts Confirm That Section 230 Provides for Immunity from Suit*

This Court has repeatedly held that Section 230 confers immunity from suit. *See* Opening Br. at 29-32; *see also Carafano*, 339 F.3d at 1125 ("[W]e conclude that Congress intended that service providers . . . be afforded immunity from suit"). Plaintiffs seek to minimize this authority to dicta (*see* State AG Br. at 35-36; PI/SD Br. at 26-27), but they do not—and cannot—point to any cases in this Circuit holding that Section 230 immunity is *not* immunity from suit. To the contrary, in applying Section 230, this Court has reasoned that the right to the immunity will be lost if the defendant is forced to litigate the barred claim. "[S]ection 230 must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *See Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) (en banc).

Further, that this Court treats Section 230 as an immunity from suit has been recognized by numerous district courts in the Circuit.[3] *See* Opening Br. at 30; *see*

---

[3] The State AGs try to dispense with these decisions as irrelevant merely because they do not involve the collateral order doctrine. *See* State AG Br. at 36 n.6. But the State AGs do not dispute that district courts in this Circuit have repeatedly applied this Court's precedent in treating Section 230 immunity as an immunity from suit, *see* Opening Br. at 30 (citing *Republican Nat'l Comm. v. Google, Inc.*, No. 2:22-CV-01904-DJC-JBP, 2023 WL 5487311, at *8 (E.D. Cal. Aug. 24, 2023)), which is the key to satisfying the collateral order doctrine.

*also Doe (K.B.) v. Backpage.com, LLC*, 768 F. Supp. 3d 1057, 1062 (N.D. Cal. 2025); *Smith v. Substack, Inc.*, No. 24-CV-00727-AGT, 2024 WL 3757501, at *3 (N.D. Cal. Aug. 12, 2024). And nearly every other circuit to consider the issue has concluded that Section 230 immunity is immunity from suit. *See supra* at 10.

Plaintiffs' argument that Section 230 provides immunity from liability but not immunity from suit (*see* State AG Br. at 30; PI/SD Br. at 23) is unavailing. The fact that Section 230 provides immunity from liability is in no way inconsistent with the fact that it *also* provides immunity from suit. The two are not mutually exclusive. The State AGs' reliance on *Nunag-Tanedo v. East Baton Rouge Parish School Board*, 711 F.3d 1136 (9th Cir. 2013), is therefore misplaced. *See* State AG Br. at 33. That case is distinguishable—this Court held that the *Noerr-Pennington* doctrine, a First Amendment defense, did "not confer a right not to stand trial." *Nunag-Tanedo*, 711 F.3d at 1139-40. But, unlike that First Amendment defense, Section 230 is an immunity from suit in addition to being a defense to liability.[4] Its purpose is to shield internet companies from the burden of litigation entirely for claims that treat them as a publisher of third-party content. *See Roommates*, 521 F.3d at 1175.

---

[4] Consistent with that distinction, Meta's collateral order appeal does not encompass the district court's denial of Meta's motion to dismiss certain of plaintiffs' claims based on the *Noerr-Pennington* doctrine. *See* 1-ER-91-92 (October 15, 2024 MTD Order).

13

The argument that Section 230 is an affirmative defense is similarly unavailing. *See* PI/SD Br. at 34. Most, if not all, immunities are exercised as affirmative defenses that the defendant bears the burden of establishing. *See, e.g.*, *Pistor v. Garcia*, 791 F.3d 1104, 1110-11 (9th Cir. 2015) (observing that tribal sovereign immunity is "an immunity from suit" and also "may be viewed as an affirmative defense"). The question is whether Section 230 is an immunity from suit *in addition to* an affirmative defense, and Ninth Circuit authority answers that question in the affirmative.

Unable to overcome this Court's precedent, plaintiffs urge the Court to rely on out-of-circuit case law declining to apply the collateral order doctrine to the denial of Section 230 immunity. But to follow those decisions would directly contravene the plain text of Section 230—including its expression of the substantial public interests it advances—and this Court's well-established interpretation of the statute as an immunity from suit.[5] And, in any event, contrary

---

[5] Vermont's, New Hampshire's, and the nine additional states' (the "Amici States") assertion that state trial courts have declined to take interlocutory review of denials of Section 230 immunity is similarly unpersuasive. *See* Brief of Vermont, New Hampshire, and Nine Other States as Amici Curiae in Support of Plaintiffs-Appellees, *People of the State of California et al. v. Meta Platforms, Inc. et al.*, No. 24-7032 (9th Cir. 2025), at 10-14. The state decisions the Amici States rely upon do not analyze the issue under the federal collateral order doctrine, as is required here. *See id.* More importantly, to follow those state courts and deny immediate review would directly conflict with this Court's precedent that Section 230 immunity is an immunity from suit—which the Amici States concede state supreme courts have not weighed in on. *See id.* at 12.

to plaintiffs' overstatement—*see* State AG Br. at 29 ("[E]very court of appeals to have considered this issue has . . . held that the collateral order doctrine does not allow . . . review of decisions regarding Section 230 defenses"); PI/SD Br. at 2 ("[E]very circuit to have considered [whether the denial of Section 230 immunity satisfies the collateral order doctrine] has rejected it")—only *one* court of appeals (the Tenth Circuit) has squarely declined to apply the collateral order doctrine to the denial of Section 230 immunity. *Gen. Steel Domestic Sales, L.L.C. v. Chumley*, 840 F.3d 1178, 1182 (10th Cir. 2016).

In *Chumley*, the Tenth Circuit dismissed an appeal brought under the collateral order doctrine based solely on its incorrect conclusion that Section 230 does not provide immunity from suit. *See id.* at 1181-82; State AG Br. at 29; PI/SD Br. at 20-21. The Tenth Circuit thus failed to recognize the irreparable loss of the statutory right to immunity when defendants are forced to litigate otherwise barred claims. *Chumley* has no bearing here because it misreads the plain language of Section 230 and contravenes this Court's treatment of Section 230 immunity as an immunity from suit. *See, e.g.*, *Carafano*, 339 F.3d at 1125; *Roommates*, 521 F.3d at 1174-75.

Plaintiffs also cite an unpublished Sixth Circuit order in *Jones v. Dirty World Entertainment Recordings LLC*. *See* State AG Br. at 38-39; PI/SD Br. at 20-21. In *Jones*, the court was "not persuaded that the purpose or function of the

15

CDA will be imperiled by delaying an appeal *in this particular case*." Order, *Jones*, No. 12-5133, 2-3 (6th Cir. May 9, 2012) (ECF 39-2) (emphasis added). There, too, the Sixth Circuit failed to grapple with Section 230's text. Applying that fact-specific ruling here would also be inconsistent with the Sixth Circuit's subsequent decision in the same *Jones* litigation, which recognized that Section 230 confers immunity from suit. *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 417 (6th Cir. 2014). It is therefore plaintiffs' reliance on the earlier *Jones* order that is "inapt." *See* State AG Br. at 36 n.6.

### B. Meta's Appeal Satisfies All Three Prongs of the Collateral Order Doctrine

That Section 230 provides immunity from suit is dispositive of the collateral order question. *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1015 (9th Cir. 2013) ("[W]e have held that whether an immunity . . . [is] an immunity from suit . . . is dispositive in determining whether an immediate appeal of an order denying an immunity should be available." (internal quotation marks omitted)); *see also Mitchell*, 472 U.S. at 525 (describing immunity from suit as "the heart of the issue" in determining if the collateral order doctrine applies). And a denial of Section 230 immunity easily satisfies the factors for collateral order review. Plaintiffs' assertions to the contrary are all based on the flawed premise that Section 230 does not provide immunity from suit and must therefore be rejected.

16

1.  *The Failure to Warn Rulings Are Conclusive*

In declining to dismiss the failure to warn claims pursuant to Section 230, the district court "conclusive[ly] determin[ed]" as a matter of law the question of whether Meta is entitled to immunity from suit. *Hampton v. California*, 83 F.4th 754, 762 (9th Cir. 2023), *cert. denied sub nom. Diaz v. Polanco*, 144 S. Ct. 2520 (2024) (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145 (1993)). The State AGs do not challenge this prong—presumably recognizing there is no basis to do so. The PI/SD plaintiffs nevertheless assert that the district court's order is not conclusive because the denial of a motion to dismiss based on Section 230 means "the defendant has not, at that stage, met its burden to prove that it is entitled to the defense." *See* PI/SD Br. at 31. Plaintiffs' argument fails because it ignores that Section 230 confers immunity from suit. *See Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (denial of a motion to dismiss asserting immunity from suit is a conclusive determination that triggers the collateral order doctrine); *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) ("denial of a motion to dismiss is conclusive as to th[e] right" of a defendant "to avoid the burdens of such pretrial matters as discovery" (internal quotation marks omitted)).

The PI/SD plaintiffs also incorrectly assert that a denial of a motion to dismiss based on Section 230 is "inherently tentative," *see* PI/SD Br. at 31, relying on *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271 (1988). In

17

*Gulfstream*, the Supreme Court held the denial of a motion to stay or dismiss a federal case when a similar state action was pending did not satisfy the conclusiveness prong because it "may indicate nothing more than that the district court is not completely confident of the propriety of a stay or dismissal at that time." *Id.* at 278. But whether the district court may "revisit and reassess," *id.*, its ruling does not matter; the denial of Section 230 immunity is inherently conclusive because it irreparably forces the defendant to litigate claims from which it is immune. *Hampton*, 83 F.4th at 762 (motion to dismiss order denying immunity from suit is a "'conclusive determination' that [a defendant] '[has] no right not to be sued.'" (quoting *P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 145)).

> 2. *The Immunity from Suit Question on Appeal Is Separate from the Merits of Plaintiffs' Failure to Warn Claims*

Appellate review of the district court's decision not to apply Section 230 immunity to the failure to warn claims would "resolve important questions separate from the merits." *Hampton*, 83 F.4th at 761 (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009)). Plaintiffs' assertion that the immunity question is "part and parcel" of the merits fails because it turns on their refusal to acknowledge that Section 230 confers immunity from suit (*see* State AG Br. at 40-41; PI/SD Br. at 29-30), and because the merits of the underlying failure to warn claims are not in play in this appeal. The PI/SD plaintiffs nonetheless seek to distract this Court with examples of orders that courts have held were not

18

completely separate from the merits—the denial of a *forum non conveniens* motion, designation of lead plaintiff in a securities class action, and a discovery-sanctions order. *See* PI/SD Br. at 29-30. Here, by contrast, any ultimate liability on the failure to warn claims turns on issues that are independent of whether the immunity from suit extends to those claims.

Indeed, this Court has consistently decided the question of whether Section 230 immunity applies without reaching the merits of the claims. *See, e.g.*, *Carafano*, 339 F.3d at 1125 n.3; *Roommates*, 521 F.3d at 1164; *Atkinson v. Meta Platforms, Inc.*, No. 20-17489, 2021 WL 5447022, at *3 (9th Cir. Nov. 22, 2021). Although the Court in those cases considered the substance of the claims, *see* PI/SD Br. at 30, the determination of the immunity question was completely separate from the merits. *See, e.g.*, *Atkinson*, 2021 WL 5447022, at *3 ("Because [plaintiff's] California Unfair Competition Law claim . . . [is] barred by Section 230(c)(1), . . . we need not reach its merits."). The cases on which plaintiffs rely are inapposite because they do not involve immunities from suit. *See* State AG Br. at 40-42; PI/SD Br. at 29-30.

### 3. *The Failure to Warn Rulings Would Be Effectively Unreviewable After Final Judgment*

Because the district court's failure to warn rulings deprive Meta of immunity from suit, they would be "effectively unreviewable on appeal from the final judgment," *Hampton*, 83 F.4th at 761 (quoting *Mohawk*, 558 U.S. at 106), and the

immunity would be "effectively lost" as to the claims on appeal if they are permitted to proceed, *Mitchell*, 472 U.S. at 526.

Allowing the failure to warn claims on appeal to proceed would also imperil a substantial public interest. *See Will v. Hallock*, 546 U.S. 345, 353 (2006).[6] Plaintiffs argue that the collateral order doctrine applies only to orders that "involve the weightiest of public interests." PI/SD Br. at 28. But they ignore that forcing interactive computer service providers to litigate claims based on publishing conduct protected by Section 230 immunity from suit would directly undermine the substantial public interests that Congress expressly articulated in the statute itself. 47 U.S.C. § 230(b). Further, this Court has recognized that Section 230 encourages "the free exchange of information and ideas over the Internet" by shielding service providers from the burdens of suit for publishing content created by third parties. *Carafano*, 339 F.3d at 1122-23; *see also id.* at 1124 ("Faced with potential liability for each message republished by their services, . . . providers might choose to severely restrict the number and type of messages posted." (citation omitted)); *Kimzey v. Yelp!, Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016) (the

---

[6] That Meta has not asked the district court for a stay of proceedings, *see* State AG Br. at 39 n.7, is not relevant to whether the appeal involves a substantial public interest. In any event, Meta has taken the position that no trial in these cases should proceed until the appeal is resolved.

Internet "ha[s] flourished" as the result of Section 230 (citing 47 U.S.C.

§ 230(a)(3)-(4)).[7]

The cases on which plaintiffs rely involved no such public interest. *See*

State AG Br. at 38-39; PI/SD Br. at 27-29. *Will* concerned the judgment bar of the

Federal Tort Claims Act (FTCA), which can only be raised after a case under the

FTCA has been resolved in the Government's favor. 546 U.S. at 354. The

Supreme Court held the FTCA judgment bar was therefore unlike qualified

immunity and more like claim preclusion. *Id.* By contrast, Section 230, like

qualified immunity, may be raised at the beginning of a case. *See id.* at 353. And

in *Childs v. San Diego Family Housing LLC*, this Court held that rejecting a claim

of derivative sovereign immunity did not satisfy the collateral order doctrine

because, unlike qualified immunity, the only interest served by immediately

---

[7] The Electronic Privacy Information Center, Common Sense Media,
Cybersecurity for Democracy, the Tech Justice Law Project, and legal scholars (the
"EPIC Amici") take the substantial public interest factor to an extreme, asserting
that the collateral order doctrine does not apply because the Internet will not be
"destroyed" by denying Meta immunity from suit. *See* Brief of Electronic Privacy
Information Center, Common Sense Media, Cybersecurity for Democracy, the Tech
Justice Law Project, and Legal Scholars as Amici Curiae in Support of
Plaintiffs-Appellees, *People of the State of California et al. v. Meta Platforms, Inc.
et al.*, No. 24-7032 (9th Cir. 2025), at 34-39. That is of course not what Meta
argues, and it is not what courts require to satisfy the collateral order doctrine. As
Meta has established, denying Meta immunity from suit would contravene the
important policies encouraged by the statute: to prevent the threat of liability from
chilling innovation and development on the Internet. *See* 47 U.S.C. § 230(b);
*Carafano*, 339 F.3d at 1122-23.

reviewing a denial of derivative sovereign immunity would be "simply abbreviating litigation troublesome to Government employees." 22 F.4th 1092, 1098-99 (9th Cir. 2022) (citation omitted).  Unlike the immunity at issue in *Childs*, Section 230 immunity *is* akin to qualified immunity because denying service providers immunity from suit undermines free speech and other public interests that reach far beyond the litigant's own interest in "abbreviating litigation."  *See id.* at 1096, 1098.

The State AGs also cite the unpublished Sixth Circuit order in *Jones v. Dirty World Entertainment Recordings LLC*, *see* State AGs Br. at 38, but, as established above, that order was expressly cabined to the particular circumstances of the appeal in that case.  *See supra* at 15-16.  Further, in applying the collateral order doctrine, the Sixth Circuit later held that "an immunity from suit is imbued with a significant public interest."  *Black v. Dixie Consumer Prods. LLC*, 835 F.3d 579, 584 (6th Cir. 2016) (quoting *DC Comics*, 706 F.3d at 1013, 1015).

Plaintiffs suggest that the chilling effect on third-party speech that would result from forcing service providers to litigate claims barred by Section 230 cannot compel immediate appeals because, in *Nunag-Tanedo*, this Court rejected the application of the collateral order doctrine to an order denying the *Noerr-Pennington* defense.  *See* State AG Br. at 39; PI/SD Br. at 28-29.  But in that case there was no denial of immunity from suit warranting immediate appellate review.

22

## II.     The District Court Erred by Forcing Meta to Litigate Failure to Warn Claims from Which It Is Immune Under Section 230

The failure to warn claims at issue on this appeal relate to publishing activities that reside in the heartland of conduct protected by Section 230.  In engaging in those activities, Meta was acting in its role as a publisher of third-party content.  Plaintiffs' claims seek to impose a *duty* on Meta that *derives from its status or conduct as a publisher of third-party content*.  *See Bride*, 112 F.4th at 1176.  Plaintiffs' contention that their failure to warn claims nevertheless fall outside the scope of Section 230 misreads the statute, the case law, and their own complaints.

### A.     The Failure to Warn Claims Should Be Dismissed Because They Are Based on Publishing Conduct Protected by Section 230

Meta established in its Opening Brief that the platform features at issue constitute publishing activity for purposes of Section 230 immunity from suit.  *See* Opening Br. at 21-25.  As set forth below, plaintiffs fail to show otherwise.

Section 230 precludes liability against "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider."  *Barnes*, 570 F.3d at 1100-01.  The crux of the *Barnes* test is "whether the duty that the plaintiff alleges the defendant violated derives from the defendant's *status or conduct as a 'publisher.'"  Id.* at 1102

23

(emphasis added). Here, the platform features at issue are quintessential publishing activity, each involving Meta's publication of third-party content. *See* Opening Br. at 21-25. Therefore, any claim seeking to impose a duty on Meta that derives from such publishing activity is protected by Section 230. *See Bride*, 112 F.4th at 1176-77. The district court's ruling otherwise was error.

The features upon which the failure to warn claims are based—Meta's **recommendation algorithm**, **notifications**, **ephemeral content**, **certain timing features**, **infinite scroll**, **"Likes," account recommendation**, **private messaging**, and **geolocation features**[8]—constitute quintessential publishing conduct that is immune from suit under Section 230 because each of these tools and features involves editorial decisions about whether and how third-party content is presented or modified. *See* Opening Br. at 23-25. Plaintiffs in essence seek to hold Meta liable for failing to warn of alleged harms caused by platform "tools meant to

---

[8] The PI/SD plaintiffs do not address the account recommendation, private messaging, or geolocation features in their brief because they state that they "are not relevant to the theory that Meta failed to warn of the risk of compulsive use." PI/SD Br. at 56 n.14. Meta has not limited its appeal to any particular theory or set of theories advanced by plaintiffs. Rather, Meta brought this appeal because the district court erred in permitting failure to warn claims to proceed that were premised on the same features the district court held were publishing activities under Section 230. The PI/SD plaintiffs cannot unilaterally limit the scope of Meta's appeal by artificially narrowing the district court's holding. *See* Section II.G, *infra*. To the extent the PI/SD plaintiffs continue to pursue failure to warn claims as to account recommendation, private messaging, or geolocation features, Meta addresses them herein among the other features at issue on this appeal.

facilitate the communication and content of others." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097-98, 1100-01 (9th Cir. 2019).[9]  To permit such claims would render Section 230 toothless.  *See Herrick v. Grindr LLC*, 765 F. App'x 586, 591 (2d Cir. 2019) (holding that Section 230 precludes failure to warn claims that are "inextricably linked" to a platform's publishing activities).

The Ninth Circuit has made crystal clear that efforts to impose liability for a "defendant's status or conduct as a 'publisher'"—like the claims do here—fall comfortably within the scope of Section 230.  *Barnes*, 570 F.3d at 1102; *see also John Doe 1 v. Twitter, Inc.*, No. 24-177, 2025 WL 2178534 at *4 (9th Cir. Aug. 1, 2025); *Doe v. Grindr Inc.*, 128 F.4th 1148, 1151 (9th Cir. 2025), *petition for cert. filed*, No. 24-1202 (U.S. May 23, 2025); *Bride*, 112 F.4th at 1177; *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 742 (9th Cir. 2024); *Diep v. Apple, Inc.*, No. 22-16514, 2024 WL 1299995, at *1 (9th Cir. Mar. 27, 2024); *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1091 (9th Cir. 2021); *Atkinson*, 2021 WL 5447022, at *2; *Dyroff*, 934 F.3d at 1099; *Beckman v. Match.com, LLC*, 668 F. App'x 759 (9th Cir. 2016). That includes efforts to hold websites liable for "reviewing, editing, and deciding

---

[9] That *Dyroff* did not reach the failure to warn claim on Section 230 grounds (PI/SD Br. at 50-51) is beside the point.  *Dyroff* made clear that Section 230 precludes claims against social media platforms for "content-neutral tools used to facilitate communications" and third-party content.  934 F.3d at 1096.  And a claim seeking to hold a platform liable for failing to warn about those same tools is no different.

whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102; *see also id.* (citing *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) for the proposition that these protected publishing decisions are examples of "a publisher's traditional editorial functions[.]").[10] Meta uses each of its publishing tools to assist in the organization and presentation of third-party content, and Section 230 precludes claims that seek to impose liability based on those publishing decisions.

The PI/SD plaintiffs hypothesize that, had the district court analyzed the features "in combination," rather than in isolation, it would have concluded that Section 230 does not apply to their claims. *See* PI/SD Br. at 54-55. Their argument appears to be that analyzing the features individually was wrong because there is "a broad range of steps that Meta could take to remedy the harm its platforms cause," and that Section 230 would not necessarily bar a claim based on harms from the features in combination, even if it would bar a claim based on one feature. *Id.* at 55. This strained reasoning is legally and logically flawed. As an

___

[10] To the extent this Court has sometimes considered whether a claim would specifically require monitoring and removing content, those are simply forms of quintessential publishing activity that *also* fall under Section 230. *See, e.g.*, *Doe 1 v. Twitter,* 2025 WL 2178534, at *2 ("A claim that obliges the defendant to monitor third-party content to avoid liability *also* treats the defendant as a publisher." (emphasis added) (citation omitted)); *Calise*, 103 F.4th at 742 ("If [the claim] obliges the defendant to 'monitor third-party content'—or else face liability—then *that too* is barred by § 230(c)(1)." (emphasis added) (citing *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019))).

initial matter, the PI/SD plaintiffs' own complaints contain a host of feature-specific allegations. *See, e.g.*, 4-ER-732-38 ¶¶ 264-81 (Personal Injury Pls' Compl.), 3-ER-450-56 ¶¶ 382-397 (School District Compl.) (dealing almost exclusively with Meta's algorithms); 4-ER-739-40 ¶¶ 284-88 (Personal Injury Pls' Compl.), 3-ER-457-58 ¶¶ 401-406 (School District Compl.) (addressing only Meta's "Likes" feature). More importantly, because each of the platform features constitutes publishing activity, claims alleging harms caused by such features— whether analyzed individually or in combination—are barred by Section 230.

The PI/SD plaintiffs also appear to suggest that Meta's publishing tools are so effective at engaging users that they cannot actually be a form of publishing. *See* PI/SD Br. at 56-63. For example, in discussing ephemeral content, the PI/SD plaintiffs assert that if *The New York Times* printed certain articles in disappearing ink "to entice readers into constantly checking for the latest article," such a practice could not be a "traditional editorial function." *See id.* at 61. But publishing third-party content in a manner that encourages reader engagement is a quintessential editorial function, even if it uses new technology that may not have been available to traditional print publishers. *See M.P. by & through Pinckney v. Meta Platforms Inc.*, 127 F.4th 516, 526 (4th Cir. 2025), *petition for cert. filed*, No. 24-1133 (U.S. May 2, 2025) ("[A] newspaper company does not cease to be a publisher simply because it prioritizes engagement in sorting its content.").

Indeed, traditional publishers often use different publishing tools to keep readers engaged, such as by placing the most interesting and engaging pieces in prominent positions or presenting stories using a continuing series of articles.

As the district court correctly recognized, where the platform features at issue were allegedly designed to maximize user engagement, Meta's use of such features is "conduct that is identical to publishing." *See* 5-ER-946 (November 14, 2023 MTD Order) (noting the fact that Meta's publishing tools are allegedly "crafted to increase the quantity of user interaction, regardless of content" does not affect the Section 230 analysis). "To hold otherwise would essentially be to hold that any website that generates revenue by maintaining the interest of users and publishes content with the intent of meeting this goal, would no longer be entitled to Section 230 immunity." *Id.*

## B. Plaintiffs Fail to Identify an Independent Duty Giving Rise to a Failure to Warn Claim, As Required by This Court's Most Recent Rulings

The analysis of whether Section 230 bars a failure to warn claim turns on the source of the duty. As this Court made clear in *Bride*:

> [t]he question of whether [Section] 230 immunity applies is not simply a matter of examining the record to see if a claim, including its underlying facts, stems from third-party content. . . . *Instead*, we must engage in a careful inquiry into the fundamental duty invoked by the plaintiff and determine if it derives from the defendant's status or conduct as a publisher or speaker.

112 F.4th at 1178 (emphasis added) (internal quotation marks omitted); *see also* *Grindr*, 128 F.4th at 1151; *Calise*, 103 F.4th at 740.

In this case, the alleged duty unequivocally turns on Meta's role as a publisher: plaintiffs' claims expressly target Meta for its role and its conduct as a *publisher*. These claims are therefore unlike those cases where a duty to warn arose from a duty that was *entirely separate* from the defendant's "role in . . . publishing third-party content." *Lemmon*, 995 F.3d at 1093. Here, the alleged duty to warn derives from the manner in which Meta goes about publishing content on its platforms. In other words, Meta's publishing activity is not merely "relevant" to plaintiffs' failure to warn claims (State AG Br. at 55; *see also* PI/SD Br. at 42); those claims are based *entirely* on publishing activities and are, therefore, barred by Section 230. This Court has consistently *and recently* held that failure to warn claims like plaintiffs' are barred by Section 230. *See* Opening Br. at Section II.B.

In dismissing the negligent design and failure to warn claims at issue in *Bride*, this Court rejected the plaintiffs' attempts to "plead around" Section 230 by attempting to hold YOLO liable for creating an "unreasonably dangerous" platform, and for failing to warn about that alleged harm, because those claims would ultimately "hold YOLO responsible for users' speech or YOLO's decision to publish it." 112 F.4th at 1179-81. The PI/SD plaintiffs attempt to distinguish

29

their claims from those in *Bride* by arguing that their claims "do not depend on" user content. PI/SD Br. at 51-52. But that is not the relevant inquiry. Application of Section 230 immunity turns on whether a claim invokes a duty based on the defendant's role or conduct—as a publisher of third-party content. *Bride*, 112 F.4th at 1178; *supra* at 23-24. And a claim does just that, where it seeks to impose liability for a defendant's "decision to publish [user content]," *Bride*, 112 F.4th at 1180, or for its decisions about how to publish user content.

Similarly, in *Grindr*, this Court dismissed both design defect and failure to warn claims based on Grindr's "neutral [platform] features [that] were 'meant to facilitate the communication and content of others' and 'were not content in and of themselves,'" finding the claims barred by Section 230. 128 F.4th at 1153 (quoting *Dyroff*, 934 F.3d at 1098). This Court rejected the plaintiffs' failure to warn claims where, as here, the plaintiffs had not alleged that Grindr had "independent knowledge of a conspiracy," and concluded that "Grindr's role as a publisher does not give it a duty to warn users of a 'general possibility of harm' resulting from [its platform]." *Id.* at 1154 (quoting *Bride*, 112 F.4th at 1181).

The State AGs attempt to distinguish *Grindr* by alleging that "Meta knew of severe risks stemming from harmful features yet misled the public as to these risks." State AG Br. at 77. This Court in *Grindr* made clear, however, that "a duty to warn" users arose only where "the provider is aware of a 'known conspiracy

30

operating *independent of the site's publishing function*.'"  128 F.4th at 1154 (emphasis added) (quoting *Bride*, 112 F.4th at 1180-81).  Plaintiffs' allegations that Meta knew about alleged harms arising from its publishing activities are not "independent" from Meta's publishing functions; they are entirely based on the ways Meta makes content available to users.  Plaintiffs do not allege, nor do they assert in their briefs, that Meta learned of something separate and apart from its publication of third-party content that would create a duty to warn that is not foreclosed by Section 230.

Plaintiffs' reliance on *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016) is also inapt.  Unlike the failure to warn claim in *Internet Brands*, which had "*no bearing on [the defendant]'s decision to publish any information on its site*," *Bride*, 112 F.4th at 1180-81 (emphasis added), plaintiffs' failure to warn claims here *directly target* Meta's publishing decisions.  *Cf. Hall v. YouTube, LLC*, No. 24-CV-04071-WHO, 2025 WL 1482007 at *7 (N.D. Cal. May 5, 2025) (describing the failure to warn claim in *Internet Brands* as based on "offline criminal conduct *unrelated* to publishing decisions" (emphasis added)).[11]

---

[11] *Internet Brands* has been read as requiring a "close connection between the proposed warning and user-generated content" on Meta's platforms.  *Herrick v. Grindr*, 306 F. Supp. 3d 579, 592 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019).  The PI/SD plaintiffs purport to be confused by this reading.  *See* PI/SD Br. at 44 n.8.  But the district court in *Herrick*, later affirmed by the Second Circuit, correctly understood *Internet Brands* as holding that failure to warn claims treat providers as a publisher in contravention of Section 230 where the proposed

Plaintiffs' reliance on *Lemmon* (*see* State AG Br. at 52; PI/SD Br. at 49-50) is similarly misplaced. Unlike the "speed filter" there, which was "fully independent" of the defendant's publishing role or conduct, *Lemmon*, 995 F.3d 1093, each of the publishing activities about which plaintiffs allege Meta had a duty to warn is used by Meta to disseminate and present third-party content to its platform users. The sole purpose of these features is to assist Meta in the publishing of third-party content. The "speed filter" in *Lemmon*, by contrast, had no similar publishing function, nor did it "rest on third-party content." *Id*.

In its recent decisions in *Bride* and *Grindr*, this Court made clear that claims seeking to hold internet platforms liable for "merely a general possibility of harm resulting from use of" Meta's platforms "which largely exists anywhere on the internet" are barred by Section 230. *Bride*, 112 F.4th at 1181; *Grindr*, 128 F.4th at 1154. The State AGs concede this point by failing to respond to it at all. The PI/SD plaintiffs respond by again seeking to limit Section 230's reach improperly. They contend that they "do not allege that there is a general possibility that Meta's features could be used to post harmful content" but instead "that Meta's features *themselves* cause harm." PI/SD Br. at 53. That distinction does not allow plaintiffs to avoid Section 230 immunity. To hold Meta liable for "behavior[] that

---

warning cannot be disentangled from decisions to publish third-party content. *Herrick*, 306 F. Supp. 3d at 592.

is not unique to" its platform would contravene the very purpose of Section 230—
to protect internet companies like Meta from facing suit for the use of content-
neutral tools that assist in the publication of third-party content to users. *Bride*,
112 F.4th at 1182.

### C. The District Court Erred When It Permitted Plaintiffs to Plead Around Section 230 Immunity from Suit

By allowing plaintiffs' failure to warn claims to proceed, while other claims
based on identical platform features were properly dismissed pursuant to the
statute, the district court permitted plaintiffs to skirt the bounds of Section 230.
This decision departs from decisions of this and other courts and forces Meta to
litigate claims from which it is statutorily immune. *See* Opening Br. at 34-35.
Section 230's robust immunity—in addition to providing a basis for this Court's
jurisdiction over Meta's appeal, *see* Section I, *supra*—bars any and all claims
arising from Meta's protected publishing activities, regardless of how the cause of
action is framed.

The district court acknowledged that the failure to warn claims are based, in
part, on publishing activities "insulated by Section 230," yet nevertheless allowed
them to proceed. 1-ER-83 (October 15, 2024 MTD Order). This was error. Once
the district court correctly determined that the features at issue constitute
publishing activity and that the claims seek to hold Meta liable acting in its
capacity as a publisher, that should have been the end of the inquiry. *See* Opening

33

Br. at 34. The relevant question for Section 230 immunity "is not the name of the cause of action," but "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *See id.* at 35 (quoting *Barnes*, 570 F.3d at 1101-02). And because the claims on appeal would impose a duty to warn about protected publishing conduct and tools, as the district court correctly concluded they do, the claims necessarily and impermissibly target Meta in its role and for its conduct as a publisher.

"[A] plaintiff cannot sue someone for publishing third-party content simply by changing the name of the theory." *Barnes*, 570 F.3d at 1102-03. As explained above, this Court has consistently held that Section 230 bars claims that seek to hold websites liable for their decisions about whether and how to organize and display third-party content, including by selecting, organizing, and displaying third-party content via automated tools. *See* Section II.A, *supra*. It follows that Section 230 bars claims that seek to hold websites liable for failing to warn users about those tools. Otherwise, plaintiffs could always reframe claims that seek to hold websites liable for their decisions about how to select, organize, and present content by insisting that websites should be held liable for failing to warn about those decisions.

There was no reason here for the district court to analyze the failure to warn claims any differently than the design defect claims, all of which were based on

publishing activities. That is because plaintiffs failed to allege a separate duty unrelated to publishing activity that could potentially give rise to an independent duty to warn. *See* Section II.B, *supra*. While the PI/SD plaintiffs acknowledge that in order to determine whether Section 230 applies to a failure to warn claim, "a court must analyze the duty underlying that claim," PI/SD Br. at 48, they failed to plead any duty independent of publishing conduct. By way of contrast, in *Calise* and *Barnes*, it made sense to analyze the claims separately because the plaintiffs there alleged breaches of a duty *unrelated* to publishing activities or the manner in which the defendants published third-party content. *See Calise*, 103 F.4th at 742-43; *Barnes*, 570 F.3d at 1107. But here, plaintiffs claim that Meta has failed to warn *about* the very publishing activities which are at the heart of Section 230 immunity. Given the lack of any allegations of a duty that would warrant a separate analysis, the failure to warn claims should have been dismissed by the district court along with the design defect claims.[12]

---

[12] The PI/SD plaintiffs further assert that Meta waived any such categorical argument because it only appealed from "the district court's decision not to dismiss allegations about certain features." *See* PI/SD Br. at 49. But Meta has not waived any argument—Meta appealed *these* failure to warn rulings because the district court *already* found that the features at the root of those claims constitute protected publishing activities. There is no question that allowing those claims to proceed was a denial of immunity from suit, and whether the district court's decision not to dismiss failure to warn claims as to other features is also immediately appealable has no bearing on that issue. In any event, Meta is not obligated to appeal all possible denials of its Section 230 immunity in order to bring this appeal. Indeed, unlike Meta's collateral order appeal, a broad appeal from the entirety of the

**D.  Plaintiffs' Construction of Section 230 Immunity Is Impermissibly Narrow and Contravenes Binding Authority**

Plaintiffs make a number of additional arguments in an attempt to evade Section 230 that essentially boil down to an argument that Section 230 bars only claims that allege harm from the third-party content itself.  If that were correct, internet companies could be held liable for content-neutral publishing activities intended to increase user engagement.  Such a result is not only unsupported by the statute and this Court's precedent but would gut the core purpose of Section 230 to immunize internet publishing conduct.  Section 230 is not nearly so limited: it broadly protects against liability for a "defendant's status or conduct as a 'publisher'" of third-party content.  *See supra* at 25-26.

Under plaintiffs' impermissibly narrow construction, the statute would apply only when an interactive computer service provider is being held liable for "some harmful content provided by a third party."  State AG Br. at 52; *see also* PI/SD Br. at 37 ("Section 230 prohibits holding [internet companies] liable for the 'improper nature of the content' that their users post." (citation omitted)); State AG Br. at 52-55 (asserting Section 230 immunizes publishers of third-party content only when the alleged harm derives from the third-party content itself); PI/SD Br. at 35-38

---

district court's Section 230 rulings at this juncture would far exceed the scope of the collateral order doctrine and therefore suffer from the same jurisdictional defect as plaintiffs' cross-appeals.  *See* Section III.A, *infra*.

(same). The PI/SD plaintiffs seek to confine Section 230 immunity to claims in which internet companies are being held "derivatively" or "vicariously" liable for third-party content. PI/SD Br. at 35, 38. Meanwhile, the State AGs assert that recent state court decisions confirm "Section 230 bars liability *only* where the claims rely on harmful third-party content." State AG Br. at 54 n.8 (emphasis added); *see also* Vermont, et al. Amicus Br. at 3-5.

Plaintiffs' overly narrow construction of Section 230 is legally baseless, unsupported by the text of Section 230, and contrary to Ninth Circuit precedent. As explained above, the question is "whether the duty that the plaintiff alleges the defendant violated derives from the defendant's *status or conduct* as a 'publisher.'" *Barnes*, 570 F.3d at 1102 (emphasis added); *supra* at 25-26.[13] As set forth above, the duty invoked by the plaintiffs here stems from the activities and conduct of a publisher.

The State AGs also argue that the third *Barnes* prong means that Section 230 applies only where the plaintiff alleges harm directly from the third-party content. *See* State AG Br. at 51-52. Not so. The second *Barnes* prong asks whether the plaintiff seeks to hold the defendant liable as a "publisher or speaker" *of* the third prong—"information provided by another information content provider." 570 F.3d

---

[13] The rationale in the state court decisions cited by the State AGs and Amici States directly conflict with this binding precedent. *See* State AG Second Br. at 54 n.8; Vermont, et al. Amicus Br. at 5-10.

at 1000-01. The third prong *clarifies* that Section 230 bars claims that seek to treat the defendant as the publisher or speaker of "third-party content," but does not immunize a defendant acting as the publisher of "its *own* content." *Grindr*, 128 F.4th at 1151 (quoting *Calise*, 103 F.4th at 744). Because of the way the second and third prongs work together, it makes sense that courts routinely address them together. *See Calise*, 103 F.4th at 740 ("*Barnes* requires courts to examine each claim to determine whether a plaintiff's 'theory of liability would treat a defendant as a publisher or speaker of third-party content.'" (emphasis omitted) (quoting *Barnes*, 570 F.3d at 1101)); *Lemmon*, 995 F.3d at 1091 ("The second *Barnes* question asks whether a cause of action seeks to treat a defendant as a 'publisher or speaker' of third-party content."); *Internet Brands*, 824 F.3d at 850 (once the "first [*Barnes*] element [is] satisfied," "[t]he essential question, then, is whether [the] cause of action 'inherently requires the court to treat' [the defendant] 'as a publisher or speaker' 'of information provided by another information content provider.'" (quoting *Barnes,* 570 F.3d at 1100-02)).

In applying the *Barnes* test to the challenged features, the district court correctly noted the overlap between the second and third *Barnes* prongs and analyzed whether plaintiffs' claims seek to treat Meta as a publisher *of third-party content*. *See* 1-ER-70-71 (October 15, 2024 MTD Order). The tools at issue

determine whether and how third-party content is published. Nothing more needs to be shown for Section 230 to apply.

Contrary to plaintiffs' interpretation, the statute and the case law nowhere require a showing of harm from third-party content. Rather, Section 230 bars any claim that seeks to hold an interactive computer service provider liable for third-party speech *or* the manner in which that speech is published. *See* Section II.A, *supra*; 47 U.S.C. § 230(c)(1) ("No provider . . . of an interactive computer service shall be treated as the *publisher or* speaker of any information provided by another information content provider." (emphasis added)); *Barnes*, 570 F.3d at 1101-02. The reference to third-party content simply clarifies that Section 230 immunizes those acting as publishers of third-party content, as opposed to their *own*. *See supra* at 38. Each of plaintiffs' claims is based on Meta's decisions about whether and how to organize and present third-party content through its publishing tools. Those decisions are part and parcel of the "traditional editorial functions of publishers" (*Pinckney*, 127 F.4th at 526; *see also Zeran* 129 F.3d at 330), and lawsuits targeting such decisions are plainly barred by Section 230.

Plaintiffs' position that Section 230 immunity depends on the harm alleged is contrary to fundamental principles of immunity doctrine, under which the immunity inquiry ends once it is established that the claims challenge conduct that is, by its character, immune. *See, e.g.*, *Buckley v. Fitzsimmons*, 509 U.S. 259, 271

(1993) (prosecutorial immunity "focuses on the *conduct* for which the immunity is claimed, not on the *harm* that the conduct may have caused" (emphasis added)); *accord Torres v. Goddard*, 793 F.3d 1046, 1051 (9th Cir. 2015). In first endorsing judicial immunity, for example, the Supreme Court explained that where "the character of the [challenged] act" is judicial, it "cannot . . . be the subject of judicial inquiry," "*however injurious* in its consequences it may have proved to the plaintiff." *Bradley v. Fisher*, 80 U.S. 335, 347 (1871) (emphasis added). In applying this time-honored principle, the Supreme Court has emphasized that the immunity inquiry ends with the "nature" and "function" of the immunized conduct, without regard to the specific "act itself" that allegedly caused harm. *See Mireles v. Waco*, 502 U.S. 9, 12-13 (1991) (analyzing a claim based on "a judge's direction to police officers to carry out a judicial order with excessive force" as a challenge to the immunized "function of directing police officers to bring counsel in a pending case before the court").

Plaintiffs' focus on alleged harm impermissibly reads into the statute a nonexistent limitation on Section 230 immunity, in violation of established principles governing conduct-based immunities.

### E. Plaintiffs' Assertion That Their Claims Have "Nothing to Do" with Meta's Publication of Third-Party Content Is Belied by Their Complaints

Plaintiffs argue that their claims fall outside the bounds of Section 230's broad immunity because they do not depend on underlying content and the features are harmful irrespective of the third-party content being published.  *See* State AG Br. at 55-66; PI/SD Pls' Br. at 54-64.  They seek to reframe their claims as based "solely on Meta's design of its platforms," *see* State AG Br. at 47-50, and as having "nothing to do with the content that Meta publishes," *see* PI/SD Br. at 56-63.  But plaintiffs do not and cannot dispute that the features at issue are publishing tools that Meta uses in order to *present third-party content* to its users.  Opening Br. at 23-25; *see also Pinckney*, 127 F.4th at 535 (Section 230 barred claims where the plaintiff could not show that "Facebook's algorithm was designed in a manner that was unreasonably dangerous for viewers' use without also demonstrating that the algorithm prioritizes the dissemination of one type of content over another. Indeed, without directing third-party content to users, Facebook would have little, if any, substantive content.").  That is all that the statute requires for immunity to attach.

Moreover, it cannot be said (as plaintiffs suggest) that content-neutral design features are beyond the reach of Section 230.  In *Dyroff*, this Court held that "[n]o website could function if a duty of care was created when a website

41

facilitates communication, in a content-neutral fashion, of its users' content." 934 F.3d at 1101; *see also Bride*, 112 F.4th at 1181 (explaining that this Court's conclusion in *Bride*, including as to its dismissal of the failure to warn claims in that case, was "consistent with *Dyroff*'s reasoning"). In other words, this Court has made clear that claims, including failure to warn claims, that seek to impose liability for content-neutral design features fall within the protection of Section 230.

Notwithstanding the foregoing, plaintiffs' argument is also belied by the allegations in their own complaints. Many allegations in the complaints expressly challenge specific forms of allegedly harmful third-party content. For example, the State AGs allege that Meta's recommendation algorithms present users with allegedly "psychologically and emotionally gripping" and "distressing" content, and it is that "harmful or disturbing content" that "keep[s] young users on [Meta's platforms] longer." 6-ER-1214 ¶¶ 176-77 (Multistate AG Compl.). Similarly, the PI plaintiffs allege that Meta's algorithms recommend allegedly "upsetting or dangerous posts" and "direct users to alarming and aversive" content. 4-ER-732-33 ¶¶ 266-67 (Personal Injury Pls' Compl.).

This Court has strictly and consistently foreclosed similar attempts by other plaintiffs to "plead around [Section 230]'s strictures" by asserting their claims are not about third-party content. *Bride*, 112 F.4th at 1176; *see also Dyroff*, 934 F.3d

42

at 1098; *Kimzey*, 836 F.3d at 1265-66. Plaintiffs' claims here—no matter how they now seek to reframe them on appeal—are based on whether and how third-party content is published. Indeed, as the district court correctly held, absent Section 230 protection for the at-issue publishing activities, Meta would be forced to moderate content by "publish[ing] less [] content," "refrain[ing] from publishing" certain content at all, or "changing the way [it] publish[es] third-party content." *See* 5-ER-943-46 (November 14, 2023 MTD Order); 1-ER-72-76 (October 15, 2024 MTD Order). Plaintiffs' claims cannot be disentangled from the third-party content on Meta's platforms where the features at issue are effectively inseparable from the content itself—they are the precise means by which Meta makes third-party content available to its users. *See Grindr*, 128 F.4th at 1152-53. To allow plaintiffs' claims to proceed here would render the protections of the statute meaningless.

## F. Meta's Motions to Dismiss Do Not Seek to Strike Factual Allegations

The PI/SD plaintiffs also assert a new, alternative theory for allowing their failure to warn claims to proceed: that Meta seeks a "dismissal of *allegations* about certain design features," which plaintiffs argue Meta cannot do through a motion to dismiss. PI/SD Br. at 32-34 (emphasis added). The PI/SD plaintiffs misconstrue Meta's motions to dismiss and appeal.

Meta does not, through its motion to dismiss, seek to strike allegations from plaintiffs' complaints, nor is that what the district court ruled. *See* 1-ER-49 (October 15, 2024 MTD Order) (declining to dismiss "*theories of liability predicated on a failure-to-warn*" of alleged risks resulting from Meta's platform features (emphasis added)); 1-ER-15 (October 24, 2024 MTD Order) (same). Instead, the district court applied a federal statutory immunity to determine that plaintiffs' claims were actionable as to conduct outside the scope of the statute and not actionable as to conduct within the scope of that statute, which is entirely appropriate on a Rule 12(b)(6) motion. Indeed, courts routinely dismiss claims insofar as they assert an impermissible basis for liability. *See Planet Green Cartridges, Inc. v. Amazon.com, Inc.*, No. 23-4434, 2025 WL 869209 at *1-2 (9th Cir. Mar. 20, 2025) (after determining that Amazon was entitled to Section 230 immunity for some, but not all, of its conduct regarding products sold on its website, limiting review of the plaintiff's claims "to the extent [the claims] survive Section 230"); *Milstein v. Cooley*, 257 F.3d 1004, 1006, 1013 (9th Cir. 2001) (on appeal from a Rule 12(b)(6) dismissal, allowing plaintiff's Section 1983 claim to proceed to the extent it was based on "certain of the prosecutors' acts" that the Court determined were "not shielded by absolute immunity," while affirming dismissal of the claim as to other acts protected by the statute); *Staley v. Gilead Scis., Inc.*, No. 19-CV-02573-EMC, 2020 WL 5507555, at *11 (N.D. Cal. July 29,

2020) (explaining that "[o]ften, a plaintiff asserts a single cause of action that is predicated on more than one liability theory, and a court eliminates one theory through a motion to dismiss").

The cases cited by the PI/SD plaintiffs are easily distinguished. For instance, the PI/SD plaintiffs rely on the Seventh Circuit's decision in *BBL, Inc. v. City of Angola*, finding that the district court, in ruling on a motion for *judgment on the pleadings* (not a motion to dismiss), improperly split a First Amendment claim "into multiple components based on the *elements* of the applicable constitutional test." 809 F.3d 317, 324 (7th Cir. 2015) (emphasis added). Granting a motion for judgment on the pleadings as to particular *elements of a claim* has nothing to do with the district court's rulings, which allowed plaintiffs' claims to proceed in their entirety, but only with respect to certain theories of liability and not others.[14]

Plaintiffs' reliance on various district court cases fares no better. *See* PI/SD Br. at 33 n.6. In each of those cases, the party moving to dismiss asked the court to effectively strike factual allegations that the moving party argued could not be relied on to support the other party's underlying claims—arguments entirely distinguishable from Meta's motions to dismiss claims based on a failure to warn theory. *See id.* Unlike in those cases, Meta does not argue that plaintiffs'

---

[14] *BBL* also did not even involve striking of allegations, *see generally id.*, and is therefore irrelevant to plaintiffs' argument in any event.

45

*allegations* about certain publishing activities must be struck.  Rather, because plaintiffs' "claims themselves," *Hightower v. JPMorgan Chase Bank, N.A.*, 2012 WL 12878311, at *3 (C.D. Cal. Sept. 12, 2012), seek to hold Meta liable for failing to warn about protected publishing activity, they are barred by Section 230.

### G.    Plaintiffs' Attempts to Limit the Scope of Meta's Appeal Are Improper

In response to Meta's appeal, both groups of plaintiffs now seek to improperly limit the rulings that are subject to reversal.

The State AGs assert that they "do not bring failure-to-warn claims, but rather seek to hold Meta accountable for misleading the public in violation of state consumer-protection laws."  State AG Br. at 67.  But the district court correctly read the State AGs' deception claims as failure to warn claims.  *See* 1-ER-69 (October 15, 2024 MTD Order) ("The Court understands that the 'deceptions' and 'omissions' encompassed by the States' deceptive acts and practices claims include failure-to-warn theories.").  Until now, the State AGs never disputed the district court's treatment of their claims as failure to warn claims, including when they sought to dismiss Meta's appeal before this Court.  This is just word play: regardless of how the claims are characterized, they are based on a failure to warn theory, as both sides recognized in their motion to dismiss briefing in the district court.  *See* 1-SER-128 (Meta's MTD the Multistate Compl. and PI Pls' Non-Priority Claims) (arguing that the State AGs cannot "repackage their challenges to

46

[the] features [at issue] as omission claims"); 1-SER-40 (State AGs' Opp. to Meta's MTD the Multistate Compl.) ("To be clear: this is not *just* a failure-to-warn case." (emphasis added)). And the State AGs should not be permitted, for the first time in response to Meta's appeal, to pursue this last-ditch effort to sidestep Section 230.

Similarly attempting to skirt the bounds of Section 230, the PI/SD plaintiffs assert that the "[t]he only failure-to-warn theory the district court considered, and the only one Meta addresses, is the failure to warn about the risk of compulsive use." PI/SD Br. at 43 n.7. This is pure fiction. Meta moved to dismiss *all* of the PI/SD plaintiffs' failure to warn claims as barred by Section 230. *See, e.g.*, 1-SER-149-51 (Meta's MTD the Multistate Compl. and PI Pls' Non-Priority Claims). And the district court rejected Meta's arguments as to *all* claims that it characterized as proceeding on a failure to warn theory. *See* 1-ER-15, 46 (October 24, 2024 MTD Order); 1-ER-83-84, 136-137, 144 (October 15, 2024 MTD Order). The issue was preserved for appeal.[15]

_____

[15] To the extent the PI/SD plaintiffs rely on the district court's statement that it "declines to foreclose [plaintiffs'] failure-to-warn theories as to known risks of addiction attendant to platform features or platform construction in general" (*see, e.g.*, 1-ER-83-84 (October 15, 2024 MTD Order); 1-ER-15 (October 24, 2024 MTD Order)), the PI/SD plaintiffs offer no basis to construe that language as limiting the district court's entire ruling to only one failure to warn theory, nor any explanation as to what would have become of the rest of the failure to warn claims that Meta moved to dismiss if the ruling were so limited. Indeed, the district court's statement could just as easily be read to clarify that *only* addiction-based

In any event, regardless of how the PI/SD plaintiffs now try to reframe their claims, the failure to warn claims on appeal—whether based on "compulsive use" or otherwise—allege harms based on the publication of third-party content and are therefore barred by Section 230.  *See* Section II.A, *supra*.

## III.  Plaintiffs' Purported Cross-Appeals Should Be Dismissed or, in the Alternative, Denied

Through their cross-appeals, plaintiffs attempt to skirt the final judgment rule and expand the narrow pendent appellate jurisdiction doctrine by asking this Court to review a host of issues separate and apart from Meta's narrow collateral order appeal.  Unlike Meta's appeal, which is properly before this Court pursuant to the collateral order doctrine, *see* Section I, *supra*, this Court does not have jurisdiction to hear plaintiffs' cross-appeals.  The only way this Court may exercise jurisdiction over the cross-appeals is if plaintiffs can show that they satisfy the stringent requirements of the pendent appellate jurisdiction doctrine, which plaintiffs fail to do.  This Court should, therefore, dismiss plaintiffs' cross-appeals for lack of jurisdiction.

In the event this Court nevertheless decides to exercise pendent jurisdiction over the cross-appeals, the Court should affirm the district court's ruling holding that the design defect claims relating to the platform features at issue are barred

---

failure to warn claims could proceed, while all *other* failure to warn claims were *dismissed*.

under Section 230.  As Meta has established, *see* Section II.A, *supra*, and as the

district court correctly held, each of the at-issue platform features and publishing

tools constitute publishing activity that this Court and others have held is protected

under Section 230.  The district court therefore correctly dismissed plaintiffs'

design defect claims, which seek to hold Meta liable for protected publishing

conduct.

### A.     This Court Lacks Jurisdiction Over Plaintiffs' Cross-Appeals

1.  *It Is Undisputed That There Is No Independent Basis to Exercise Jurisdiction Over the Cross-Appeals*

It is undisputed that the district court rulings plaintiffs seek to appeal are not

final decisions under 28 U.S.C. § 1291, and—unlike Meta's appeal—they do not

fit within the collateral order exception to Section 1291.  Unlike an order *denying*

an immunity from suit, an order granting immunity does not satisfy the collateral

order doctrine.  Plaintiffs' attempt to hitch their wide-ranging cross-appeals to the

narrow and discrete issue of immunity from suit must be rejected.

2.  *There Is No Pendent Appellate Jurisdiction Over the Cross-Appeals*

Plaintiffs' cross-appeals do not meet the strict requirements of pendent

appellate jurisdiction.  The Supreme Court has established "a general rule against

exercising pendent jurisdiction over related rulings," with a limited exception when

rulings are "inextricably intertwined" or "if review of the pendent issue [is]

necessary to ensure meaningful review of the independently reviewable issue."

*Cunningham v. Gates*, 229 F.3d 1271, 1284 (9th Cir. 2000) (citing *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 44 n.2, 50-51 (1995)). Although the cross-appeals raise issues "related to" Meta's appeal, plaintiffs fail to show that their cross-appeals meet either of these stringent requirements.

First, the issues properly raised by Meta's appeal are not "inextricably intertwined" with those raised by plaintiffs' cross-appeals. This Court "ha[s] consistently interpreted 'inextricably intertwined' very narrowly." *Cunningham*, 229 F.3d at 1284. Issues are "inextricably intertwined" only if the court "*must* decide the pendent issue in order to review the claims properly raised on interlocutory appeal . . . [or] resolution of the issue properly raised on interlocutory appeal *necessarily* resolves the pendent issue." *Dominguez v. Better Mortg. Corp.*, 88 F.4th 782, 795 (9th Cir. 2023) (emphases added) (citation omitted).

This test is not met here because the only question raised on Meta's appeal is whether the district court erred in failing to apply Section 230 immunity from suit to bar plaintiffs' failure to warn claims. Although the Court could take up the district court's other Section 230 rulings in order to answer that distinct question, it does not *need* to. In its Opening Brief, Meta explained why the features at issue constitute publishing activity, which the district court also correctly concluded, to demonstrate the district court's error in denying Meta immunity from suit. *See* Meta's Opening Br. at 21-25. To resolve Meta's appeal, this Court need only

50

apply Section 230 immunity from suit to reverse the district court's failure to warn claim rulings with respect to the features that constitute publishing activity.

Second, review of the district court's decision as to the underlying features is not "necessary to ensure meaningful review" of Meta's appeal. The Ninth Circuit has "construe[d] the [] 'necessary to ensure meaningful review' prong narrowly." *K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 976 (9th Cir. 2015). For example, in concluding that review of a *Younger* abstention decision was "necessary to ensure meaningful review" of a preliminary injunction decision on appeal, this Court "took pains to cabin [its] holding" to the "unique factual context, in which a district court's actions had the potential to seriously alter the relationship between the parties and directly interfere with a state court proceeding." *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 669-70 (9th Cir. 2004) (citing *Meredith v. Oregon*, 321 F.3d 807, 816 (9th Cir. 2003)). No such threat exists here.

The State AGs rely heavily on this Court's language in *Poulos* in support of exercising pendent jurisdiction over their cross-appeal. *See* State AG Br. at 43-45. But this Court made clear there that the "necessary to ensure meaningful review" prong is "restrictive" and held that review of a *Burford* abstention issue was not "necessary to ensure meaningful review" of the class certification issue properly on appeal because the party seeking review of the pendent issue failed to "explain how [the] certification analysis hinges on or impugns the *Burford* question."

*Poulos*, 379 F.3d at 669, 671. Because the State AGs miss the point of Meta's collateral order appeal, which seeks to resolve whether the district court erred in failing to apply Section 230 immunity from suit to the failure to warn claims, they incorrectly assert that Meta's appeal "depend[s] on" the district court's rulings as to the design defect claims. State AG Br. at 44. To the contrary, this Court can determine that the challenged *features* constitute publishing activity protected by Section 230, and therefore dismiss the failure to warn claims based on those features, without needing to separately determine whether the district court *erred in dismissing other claims* relating to those features.

Unlike Meta's collateral order appeal—which involves the denial of an immunity from suit—plaintiffs raise no issue requiring immediate review. *See State of Cal., on Behalf of California Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 778 (9th Cir. 1998) (explaining a broad pendent jurisdiction regime undermines "Congress' statutory arrangement" controlling the timing of appellate proceedings); *Poulos*, 379 F.3d at 670 (noting the Ninth Circuit has "acknowledged the Supreme Court's reluctance to expand the scope of an interlocutory appeal" (internal quotation marks omitted)). Plaintiffs should not be permitted to "parlay *Cohen*-type collateral orders into multi-issue interlocutory appeal tickets," *Swint*, 514 U.S. at 49-50, by seeking immediate appellate review of

various other district court rulings distinct from the issue properly raised on Meta's collateral appeal.

3.   *To the Extent This Court Chooses to Review Any Aspect of the October 2024 Orders to Resolve Meta's Appeal, It May Do So Absent Any Cross-Appeal*

In the event this Court finds it helpful to review any aspect of the district court's orders in order to resolve the issue presented by Meta's appeal, it may do so without exercising jurisdiction over plaintiffs' cross-appeals. *See Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013) ("Once an issue or claim is properly before the court, the court . . . retains the independent power to identify and apply the proper construction of governing law, . . . and is free to consider an issue antecedent to . . . it." (internal quotation marks and citation omitted)).  Specifically, this Court can determine that the challenged *features* constitute publishing activity protected by Section 230, and therefore dismiss the failure to warn claims based on those features, without needing to separately determine whether the district court *erred in dismissing other claims* relating to those features.  There is a meaningful procedural difference between exercising pendent jurisdiction over plaintiffs' cross-appeals and considering other aspects of the district court's orders as part of this Court's review of Meta's collateral order appeal.  Engaging in the former would contravene the final judgment rule and improperly expand the pendent appellate jurisdiction doctrine.

**B.** **If the Court Exercises Pendent Appellate Jurisdiction Over Plaintiffs' Cross-Appeals, the Court Should Affirm the District Court's Dismissal of the Claims Relating to the Platform Features at Issue as Barred by Section 230**

As established above, even assuming it has jurisdiction to do so, this Court need not decide whether the district court correctly dismissed plaintiffs' underlying claims as to the features at issue. To the extent the Court determines, however, that it needs to review the merits of the district court's Section 230 rulings as to these platform features, it should affirm the district court's dismissal.

The district court correctly dismissed plaintiffs' design defect, negligence, and consumer protection claims relating to the platform features at issue because these claims are squarely barred by Section 230. As set forth above, and as the district court correctly held, the platform features at issue "directly target [Meta's] role[] as [a] publisher[] of third-party content." 5-ER-943 (November 14, 2023 MTD Order). Despite "present[ing] different legal frameworks," 1-ER-13-14 (October 24, 2024 MTD Order), each of plaintiffs' claims target the same publishing conduct that falls directly within the protections afforded by Section 230. *See* Meta's Opening Br. at 21-25; Section II.A, *supra*. To hold Meta liable for *any* claims based on these features would treat Meta as a publisher and deny Meta the immunity from suit to which it is entitled.

For the reasons set forth above, this Court should decline to exercise jurisdiction over plaintiffs' cross-appeals for lack of pendent appellate jurisdiction

or, alternatively, affirm the district court's ruling that the platform features at issue constitute publishing activity and that claims based on those features are barred by Section 230.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in its Opening Brief, Meta respectfully requests that this Court reverse the district court's order to the extent it denied Meta's motion to dismiss plaintiffs' failure to warn claims with respect to the features at issue in this appeal and dismiss or deny plaintiffs' cross-appeals.

Dated: August 22, 2025

Respectfully submitted,

*/s/ James P. Rouhandeh*
James P. Rouhandeh (*pro hac vice*)
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Email: rouhandeh@davispolk.com

Paul W. Schmidt (*pro hac vice*)
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Email: pschmidt@cov.com

*Attorneys for Defendants-Appellants Meta Platforms, Inc. f/k/a Facebook, Inc.; Meta Payments Inc.; Meta Platforms Technologies, LLC f/k/a Facebook Technologies, LLC; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Instagram, LLC; and Siculus, Inc.*

## CERTIFICATE OF COMPLIANCE

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**: Nos. 24-7032, 24-7037, 24-7300, 24-7304, 24-7312, 24-7265

     I am the attorney or self-represented party.

     **This brief contains 13,713 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

     I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[X] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** */s/ James P. Rouhandeh*   **Date** August 22, 2025
*(use "s/[typed name]" to sign electronically-filed documents)*