**Nos. 24-7032, 24-7037, 24-7265, 24-7300, 24-7304, 24-7312**

# In the United States Court of Appeals for the Ninth Circuit

PERSONAL INJURY PLAINTIFFS; ET AL.,

*Plaintiffs-Appellees-Cross-Appellants,*

—v.—

META PLATFORMS, INC.; ET AL.,

*Defendants-Appellants-Cross-Appellees,*

—and—

PERSONAL INJURY PLAINTIFFS; ET AL.,

*Plaintiffs-Appellees-Cross-Appellants,*

—v.—

TIKTOK LLC; ET AL.,

*Defendants-Appellants-Cross-Appellees.*

and Consolidated Cases

On Appeal from the United States District Court
for the Northern District of California, Oakland Division
Case No. 4:22-MD-03047 (Hon. Yvonne Gonzalez Rogers) (MDL No. 3047)

## REPLY BRIEF OF PLAINTIFFS-APPELLEES

MATTHEW W.H. WESSLER
MICHAEL SKOCPOL
GUPTA WESSLER LLP
2001 K Street NW
Suite 850 North
Washington, DC 20006
(202) 888-1741

JENNIFER BENNETT
GUPTA WESSLER LLP
505 Montgomery Street, Suite 625
San Francisco, CA 94111
(415) 573-0336
*jennifer@guptawessler.com*

*(Additional counsel listed on inside cover)*

October 14, 2025

*Counsel for Personal Injury and School District
Plaintiffs-Appellees-Cross-Appellants*

LEXI J. HAZAM
LIEFF CABRASER HEIMANN &
BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
(415) 956-1000

JASON L. LICHTMAN
GABRIEL A. PANEK
LIEFF CABRASER HEIMANN &
BERNSTEIN LLP
250 Hudson Street, 8th Floor
New York, NY 10013
(212) 355-9500

ANDRE MURA
GIBBS MURA LLP
111 Broadway, Suite 2100
Oakland, CA 94607
(510) 350-9717

PREVIN WARREN
ABIGAIL BURMAN
MOTLEY RICE LLC
401 9th Street NW, Suite 630
Washington, DC 20004
(202) 232-5504

MATHEW P. JASINSKI
MOTLEY RICE LLC
20 Church Street, 17th Floor
Hartford, CT 06103
(860) 218-2725

# TABLE OF CONTENTS

Table of authorities ................................................................... ii

Introduction ............................................................................. 1

Argument ................................................................................. 3

I.    This Court lacks jurisdiction over both appeals, but if it had jurisdiction over Meta's appeal, it would also have jurisdiction over the cross-appeal .......................................................... 3

II.   Neither Section 230 nor the Rules of Civil Procedure support the "dismissal" of allegations about specific features ........................... 9

    A.    The Federal Rules of Civil Procedure authorize the dismissal of claims, not allegations or theories ........................... 9

    B.    Section 230 does not bar allegations based on the features Meta claims are protected ........................................... 12

Conclusion ............................................................................. 22

i

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................. 4

*BBL, Inc. v. City of Angola,*
809 F.3d 317 (7th Cir. 2015) ............................................ 10, 11

*Bilek v. Federal Insurance Co.,*
8 F.4th 581 (7th Cir. 2021) ..................................................... 11

*Bradley Construction, Inc. v. Clark & Sullivan Builders, Inc.,*
2011 WL 490660 (Cal. Ct. App. 2011) .................................... 5

*Burnett v. New York Central Railroad Co.,*
380 U.S. 424 (1965) ................................................................. 6

*Calise v. Meta Platforms, Inc.,*
103 F.4th 732 (9th Cir. 2024) ........................... 14, 16, 17, 19

*Coston v. Brown,*
2004 WL 2419173 (Del. Super. Ct. 2004) .............................. 5

*DC Comics v. Pacific Pictures Corp.,*
706 F.3d 1009 (9th Cir. 2013) ................................................ 5

*Digital Equipment Corp. v. Desktop Direct, Inc.,*
511 U.S. 863 (1994) ................................................................. 6

*Doe v. Internet Brands, Inc.,*
824 F.3d 846 (9th Cir. 2016) ................................................. 17

*Dominguez v. Better Mortgage Corp.,*
88 F.4th 782 (9th Cir. 2023) ................................................... 7

*Estate of Bride by & through Bride v. Yolo Techologies, Inc.,*
112 F.4th 1168 (9th Cir. 2024) .......................................... 17–19

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC,*
521 F.3d 1157 (9th Cir. 2008) ............................................... 17

ii

*General Steel Domestic Sales, LLC v. Chumley*,
840 F.3d 1178 (10th Cir. 2016) ................................................................ 4

*George v. McDonough*,
596 U.S. 740 (2022) ................................................................................. 15

*Gopher Media LLC v. Melone*,
2025 WL 2858761 (9th Cir. 2025) ............................................................ 4

*Henderson v. Source for Public Data, L.P.*,
53 F.4th 110 (4th Cir. 2022) ............................................................. 16, 19

*Hightower v. JPMorgan Chase Bank, N.A.*,
2012 WL 12878311 (C.D. Cal. 2012) ...................................................... 11

*Hodge v. Harkey*,
631 S.E.2d (N.C. Ct. App. 2006) ............................................................. 5

*HomeAway.com, Inc. v. City of Santa Monica*,
918 F.3d 676 (9th Cir. 2019) ................................................................... 17

*Johnson v. Jones*,
515 U.S. 304 (1995) .................................................................................. 5

*Jones v. Dirty World Entertainment Recordings LLC*,
2012 WL 13418361 (6th Cir. May 9, 2012) ............................................. 4

*Lemmon v. Snap, Inc.*,
995 F.3d 1085 (9th Cir. 2021) ........................................................... 16–18

*Mercantile National Bank v. Langdeau*,
371 U.S. 555 (1963) .................................................................................. 6

*Microsoft Corp. v. Baker*,
582 U.S. 23 (2017) ................................................................................. 4, 6

*Neder v. United States*,
527 U.S. 1 (1999) ............................................................................... 14, 15

*Pinckney v. Meta Platforms Inc.*,
127 F.4th 516 (4th Cir. 2025) ................................................................. 19

*Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP,*
136 F.4th 718 (7th Cir. 2025) ............................................................ 10, 11

*Stratton Oakmont, Inc. v. Prodigy Services Co.,*
1995 WL 323710 (N.Y. Sup. Ct. 1995) ................................................ 13, 14

*Swint v. Chambers County Commission,*
514 U.S. 35 (1995) ................................................................................ 4

*Taggart v. Lorenzen,*
587 U.S. 554 (2019) ............................................................................. 14

*United States v. Kirilyuk,*
29 F.4th 1128 (9th Cir. 2022) ............................................................. 11

*United States v. Rossman,*
940 F.2d 535 (9th Cir. 1991) ............................................................... 5

*Van Cauwenberghe v. Biard,*
486 U.S. 517 (1988) .............................................................................. 6

## Statutes

42 U.S.C. § 247d-6d ................................................................................. 6

47 U.S.C. § 230 ...................................................................................... 14

8 U.S.C. § 1183a ...................................................................................... 5

## Rules

Federal Rule of Civil Procedure 12 ......................................................... 9

# INTRODUCTION

Meta is right about one thing: This Court need not reach the merits of the plaintiffs' cross-appeal. But it's wrong about why. The issues on appeal and cross-appeal are intertwined. Meta itself seems to recognize this; it offers no substantive argument on cross-appeal except to refer the Court back to its argument on its own appeal. So if this Court has jurisdiction over Meta's appeal, then it has pendent jurisdiction over the cross-appeal. But this Court lacks jurisdiction over Meta's appeal because Meta does not appeal a final judgment. It appeals parts of interlocutory decisions on motions to dismiss that will soon be superseded by a summary-judgment order anyway. That is precisely what Congress sought to prevent by mandating that parties take a single appeal after final judgment. Meta provides no compelling justification for this Court to provide internet companies an exception to that rule.

Meta fares no better on the merits of the cross-appeal. The company's argument is that Section 230 shields anything that can be called a "publishing activity." And, according to Meta, "publishing activities" encompass virtually everything a social media app does. But that account of Section 230 cannot be squared with its text, its history, or this Court's precedent. Adopting it would create a circuit split, as well as a conflict in this Court's own cases.

Meta does not dispute that Congress enacted Section 230 to prevent

common-law publisher liability from being imposed on internet companies. Nor does it dispute that publisher liability was (and still is) well-understood to mean liability for disseminating unlawful content. Meta also does not contest that by prohibiting claims that "treat" internet companies as the "publisher" of third-party content, Congress transplanted this common-law concept into Section 230. These three undisputed propositions are all that's necessary to resolve both Meta's appeal and the plaintiffs' cross-appeal.

Meta asks this Court to expand Section 230 to shield almost anything a social media company does. But it offers no support in either the text or the history of the statute for its view that Section 230 immunizes internet companies for anything that might be called a publishing feature. To the contrary, it's black-letter law that when Congress transplants a common-law concept into a statute, the statute should be read to incorporate the concept's common-law scope. Here, that means that Section 230 prohibits holding internet companies vicariously liable for their users' content.

Meta's request for an unbounded immunity for all so-called "publishing activity" is foreclosed not only by the text and history of Section 230 itself, but also by precedent. This Court has repeatedly rejected the argument that the statute immunizes anything that might be called publishing activity. Indeed, it has rejected that argument from Meta itself. Section 230, this Court holds, prohibits internet

companies from being held liable for the content their users post—not for their own conduct. Meta offers no serious argument that the district court's dismissal of allegations about some of its features may be affirmed under this interpretation of Section 230. This Court should reverse.

## ARGUMENT

## I. This Court lacks jurisdiction over both appeals, but if it had jurisdiction over Meta's appeal, it would also have jurisdiction over the cross-appeal.

Meta asserts (at 49) that this Court lacks jurisdiction over the plaintiffs' cross-appeal. In a sense, we agree: The Court may only exercise jurisdiction over the cross-appeal if it has jurisdiction over Meta's appeal, and it does not have jurisdiction over Meta's appeal. *See* Principal Br. 20-32. If this Court does exercise jurisdiction over Meta's appeal, however, it may also exercise jurisdiction over the cross-appeal. Principal Br. 64-65.[1]

**1.** Meta correctly notes (at 52-53) that the Supreme Court has been reluctant to expand appellate jurisdiction over interlocutory orders. But the company fails to mention that, in the context of the collateral-order doctrine, the Court has been more than reluctant. It has held that new categories of collateral orders "are to come from rulemaking … *not* judicial decisions in particular controversies." *Microsoft Corp. v.*

---

[1] Unless otherwise noted, all internal quotation marks, citations, and alterations have been omitted from quotations throughout this brief.

*Baker*, 582 U.S. 23, 39 (2017) (emphasis added). The Supreme Court recognized that some courts may have pushed the collateral-order doctrine "beyond the limits dictated by its internal logic and the strict application of the criteria." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009). And Congress intervened, providing that any further "expansion" should not be achieved "by court decision, but by rulemaking." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 48 (1995) (citing 28 U.S.C. §§ 1292(e), 2072(c)). Yet Meta asks this Court to do exactly what Congress and the Supreme Court have said it should not: expand the collateral-order doctrine by judicial decision.

Both circuits that have considered the same request have denied it, holding that Section 230 orders are not appealable under the collateral-order doctrine. *Gen. Steel Domestic Sales, LLC v. Chumley*, 840 F.3d 1178, 1179-80 (10th Cir. 2016); *Jones v. Dirty World Ent. Recordings LLC*, 2012 WL 13418361 (6th Cir. 2012). This Court should do the same.

In arguing to the contrary, Meta reiterates its claim (at 16) that any order denying an immunity from suit necessarily satisfies the collateral-order doctrine. But both this Court and the Supreme Court have held otherwise. *Gopher Media LLC v. Melone*, -- F.4th --, 2025 WL 2858761, at *5 (9th Cir. 2025) (en banc) ("[N]ot every district court decision denying immunity is entitled to an interlocutory appeal under

the collateral order doctrine."); *Johnson v. Jones*, 515 U.S. 304, 307 (1995).[2] As our principal brief explains (at 23-32), Meta cannot satisfy any—let alone, all—of the collateral-order requirements.

And Meta continues to be unable to demonstrate that Section 230 grants internet companies what virtually no other company is entitled to: immunity from suit. The company purports (at 7) to rely on the statute's text, but the company can't point to anything that actually says internet companies are immune from suit. The closest Meta comes is a provision that only preempts state law, using language—"no cause of action may be brought"—that does nothing more than bar claims.[3] Meta does not cite any example of this language being used to create an immunity from suit, let alone sufficient evidence to conclude that Congress hid an extraordinary

---

[2] Meta's argument to the contrary relies on a quote taken out of context from *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009 (9th Cir. 2013). But, in any event, this Court's recent en banc decision in *Gopher Media* overrules that case.

[3] For example, the phrase "no cause of action may be brought" is commonly used for statutes of limitations. *See, e.g.*, 8 U.S.C. § 1183a(b)(2)(C) ("No cause of action may be brought … later than 10 years after the date on which the sponsored alien last received any means-tested public benefit."); *Hodge v. Harkey*, 631 S.E.2d 143, 144 (N.C. Ct. App. 2006) ("[I]n cases involving property damage, no cause of action may be brought more than ten years after the defendant's last act or omission."); *Coston v. Brown*, 2004 WL 2419173, at *2 (Del. Super. Ct. 2004) ("[N]o cause of action may be brought by reason of expiration of time."); *Bradley Constr., Inc. v. Clark & Sullivan Builders, Inc.*, 2011 WL 4906660, at *5 (Cal. Ct. App. 2011) ("[N]o cause of action may be brought after acceptance of the final payment."). Statutes of limitations, of course, do not provide immunity from suit. *United States v. Rossman*, 940 F.2d 535, 536 (9th Cir. 1991).

immunity in an ordinary preemption provision. Presumably that's why, previously, the company only noted it in a passing footnote. *See* Meta Response 21 n.7. Congress knows how to grant immunity from suit. *See, e.g.*, 42 U.S.C. § 247d-6d(a)(1) ("[A] covered person shall be immune from suit."). It did not do so here.

In an effort to fill this gap, Meta again cites stray language from cases outside the context of the collateral-order doctrine. But the company has no answer to the Supreme Court's warning that calling something an immunity from suit does not make it so: "[V]irtually any right that could be enforced appropriately by pretrial dismissal" might "loosely be … described" as an immunity from suit. *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 864 (1994). And courts frequently use the word "immunity" and even the phrase "immunity from suit" to refer to all sorts of defenses that do not actually provide a right not to stand trial. *See, e.g.*, *Van Cauwenberghe v. Biard*, 486 U.S. 517, 524 (1988) (civil process); *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428-29 (1965) (statute of limitations); *Mercantile Nat'l Bank v. Langdeau*, 371 U.S. 555, 556 (1963) (personal jurisdiction). The same is true here. Meta's own cases make clear that despite some loose language, Section 230 is, in fact, a defense to *liability*, not a right to avoid suit altogether. *See* Principal Br. 47 (discussing cases).

As this case demonstrates, authorizing immediate appeal of Section 230 orders would result in precisely the kind of "harassment," "delay," and inefficiency the final-judgment rule was designed to prevent. *Microsoft*, 582 U.S. at 36-37. Discovery is

now closed. Summary judgment briefing is under way. Still, Meta asks this Court to review the district court's orders on motions to *dismiss*—and even then, it has chosen only *some* parts of *some* of those orders to challenge. That's not a serious claim to immunity from suit; it's gamesmanship. And it's gamesmanship that will require this Court to revisit the same issues over and over again. No doubt that if this Court holds that the collateral-order doctrine applies, Meta will be back after summary judgment, presumably again picking and choosing just those parts of the order it would like to immediately appeal—only to appeal yet again after trial. And the problem will not just be limited to this case. According to Meta, every internet company has the right to force appellate courts to review piecemeal any parts of any Section 230 orders at any stage. But Congress limited parties to a single post-judgment appeal to avoid the burden and opportunity for abuse that this kind of litigation tactic imposes.

This Court should join the Sixth and Tenth Circuits and reject Meta's effort to circumvent the final-judgment rule.

**2.** If this Court does exercise collateral-order jurisdiction over Meta's appeal, however, it should also exercise jurisdiction over the cross-appeal. Meta agrees (at 50) that pendent jurisdiction applies if "resolution of [an] issue properly raised on interlocutory appeal necessarily resolves [a] pendent issue." *Dominguez v. Better Mortg. Corp.*, 88 F.4th 782, 795 (9th Cir. 2023). And Meta cannot win its appeal unless this

7

Court decides both that: (1) in considering Meta's motions to dismiss, the district court was required not only to assess whether the complaints state a claim, but to determine which factual allegations may support that claim; and (2) Section 230 protects the features that Meta says it does. Those are the same issues that are on cross-appeal.[4] Deciding them on Meta's appeal, therefore, will "necessarily" resolve them on cross-appeal. Of course, the plaintiffs do not believe this Court needs to decide either issue. *See* Principal Br. 20-32, 43-54. But if it does, on Meta's own argument, there is pendent jurisdiction.

In arguing otherwise, Meta contends (at 52) that "this Court can determine that the challenged features constitute publishing activity protected by Section 230, and therefore dismiss the failure to warn claims based on those features, without needing to separately determine whether the district court erred in dismissing other claims relating to those features." But as Meta itself recognizes elsewhere in its brief, the district court did not dismiss any claims: To the contrary, Meta emphasizes, the court "allowed plaintiffs' *claims* to proceed." Meta Response Br. 45 (emphasis added). What it dismissed were "*allegations*" about some features with respect to some legal

_____

[4] There is one difference. For Meta to win its appeal, this Court must conclude that the district court was *required* under Rule 12(b)(6) to dismiss the factual allegations that Meta challenges. The 12(b)(6) issue on cross-appeal is whether a district court has *authority* to dismiss factual allegations, rather than just claims, on a motion to dismiss. But to decide both issues, the Court will have to answer the same question: What is the scope of Rule 12(b)(6)?

theories. 1-ER-14-15, 72; 5-ER-941-46 (emphasis added). Meta's argument on appeal is that "the district court correctly held" that Section 230 bars those allegations but erred in declining to extend that conclusion to the failure-to-warn theory. Opening Br. 3. The argument on cross-appeal is that the district court was mistaken in holding that Section 230 bars those allegations. If this Court reaches the issue on appeal, that will "necessarily" resolve it on cross-appeal.

Indeed, Meta's own brief gives away the game: The company's sole substantive response to the cross-appeal is to refer the Court back to its arguments on its own appeal. Meta Response Br. 54. Thus, Meta itself recognizes that the Court's ruling on those arguments will necessarily resolve both appeals.

## II. Neither Section 230 nor the Rules of Civil Procedure support the "dismissal" of allegations about specific features.

### A. The Federal Rules of Civil Procedure authorize the dismissal of claims, not allegations or theories.

As our principal brief explains (at 32-34), the district court should not have dismissed any allegations because Rule 12(b)(6) only authorizes the dismissal of claims, not parts of claims. Fed. R. Civ. P. 12(b)(6) (authorizing a party to move to dismiss for "failure to state a claim upon which relief can be granted"). Meta concedes that the district court concluded that the plaintiffs' "claims [could] proceed." Meta Response Br. 45. That should have ended the inquiry. When a district court concludes that a complaint states a claim, the proper course is to deny the motion to dismiss that

claim. Principal Br. 32-34. Meta offers no support in Rule 12(b)(6) for the proposition that the court should entertain a request to dismiss allegations from a complaint that states a claim.

Instead, Meta asserts that's not what happened. But the district court's orders say otherwise. The court held that "*allegations* with respect to [some] features" were "barred by Section 230," while "*allegations* with respect to [other] features" were "not barred." 1-ER-14-15 (emphasis added); *see also* 1-ER-14 ("[D]efendants here move to dismiss as barred by Section 230 allegations related to [several features]."); 1-ER-72 ("In its prior order, the Court held that allegations under a products liability theory targeting certain features of the defendants' platforms were insulated by Section 230, while other features were not so insulated."); 5-ER-941-46 (listing "defect allegations" that the court concluded were or were not "barred by Section 230").

Regardless, Meta's alternative characterization (at 44-45)—that the court allowed some "theories of liability and not others"—has the same problem. As the Seventh Circuit has explained, the "question at the motion to dismiss stage is simply whether the complaint includes factual allegations that state a plausible claim." *Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 724 (7th Cir. 2025). "Where a plaintiff states a plausible claim for relief under one discernable legal theory" Rule 12(b)(6) requires that the court "start and end there." *Id.*

Meta (at 45) argues that one of the cases cited in our principal brief, *BBL, Inc. v. City of Angola*, 809 F.3d 317 (7th Cir. 2015), involved a motion for judgment on the pleadings, not a motion to dismiss. But it neglects to mention that the court specifically held that a "motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims." *Id.* at 325. Nor does Meta mention that other Seventh Circuit cases—including *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021), cited in our principal brief (at 54)—have done the same.

And, contrary to Meta's assertion (at 46), this rule is not limited to motions targeted at specific elements of a claim. It couldn't be: The text of Rule 12(b)(6) does not distinguish between different kinds of efforts to dismiss parts of claims. Whether the attempt is directed at specific elements, allegations, or legal theories does not matter. It is inappropriate on a motion to dismiss. *See Signal Funding*, 136 F.4th at 724; *Bilek*, 8 F.4th at 587. Neither of the Ninth Circuit cases that Meta cites (at 44) even considered this issue. *Cf. United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022) ("[C]ases are not precedential for propositions not considered."). But district courts in this circuit have come to the same conclusion. *See, e.g.*, *Hightower v. JPMorgan Chase Bank, N.A.*, 2012 WL 12878311, at *3 (C.D. Cal. 2012) (collecting cases). To hold otherwise, this Court would have to disregard the text of Rule 12(b)(6) and split with

the Seventh Circuit. It should not do so.[5]

### B. Section 230 does not bar allegations based on the features Meta claims are protected.

Even if the court could reach the issue, the district court was mistaken to hold that Section 230 bars allegations about certain features. Meta barely even mentions the actual features that the district court concluded could not be alleged under Section 230. Instead, Meta relies on the conclusory assertion that "each of plaintiffs' claims target the same publishing conduct that falls directly within the protections afforded by Section 230." Meta Response Br. 54. How? Meta does not say. The company argues that Section 230 bars claims based on "quintessential publishing activity," but it does not even try to explain how that argument applies to the specific conduct that the district court considered. *E.g.*, *id.* at 24. What counts as quintessential publishing activity? Meta offers no way to know—and no limit.[6]

---

[5] To be clear, to rule for Meta on its own appeal, it would not even be enough for this Court to split with the Seventh Circuit and hold that Rule 12(b)(6) authorizes district courts to dismiss factual allegations and legal theories from well-pleaded complaints. It would have to conclude that it *requires* them to do so. That's because Meta's argument is that although the plaintiffs state a claim, the district court was *required* to dismiss allegations about certain features with respect to one legal theory.

[6] The one feature Meta discusses is vanishing posts, which the company briefly mentions in asserting (at 27) that "publishing third-party content in a manner that encourages reader engagement is a quintessential editorial function." Meta also cites its opening brief, but that brief offered only a cursory argument about each feature, and of course, it did not respond to the arguments in our principal brief.

On Meta's view, the company need not discuss any specific feature because Section 230 immunizes virtually anything that a company disseminating online content does. But text, history, and precedent all foreclose this view. Section 230 bars claims that hold internet companies vicariously liable for the content they distribute. It does not shield the features Meta relies on to addict children to its platforms.

1.  **Meta's plea for an unbounded immunity for social media companies conflicts with the text and history of Section 230, as well as this Court's precedent.**

***Text and history.*** As explained in our principal brief, when Congress enacted Section 230, publisher liability was (and remains) a well-established common-law concept: If a company published unlawful content, it was legally responsible for that content, even if it was written by someone else. Principal Br. 36-37. To treat a company as a "publisher" of third-party content meant to hold it liable for that content. *Id.* Meta does not argue otherwise. Nor does it contest that by prohibiting claims that "treat" an internet company as the "publisher" of third-party content, Congress transplanted this common-law concept of publisher liability into Section 230—barring its imposition on internet companies. *Id.*

The history of Section 230 confirms this reading. As our principal brief explains (at 6-8), Congress enacted Section 230 to overrule *Stratton Oakmont*, a state-court decision that treated an internet company as the "publisher" of its users' posts, vicariously liable for their content, *Stratton Oakmont, Inc. v. Prodigy Servs. Co.*, 1995 WL

323710, at *3 (N.Y. Sup. Ct. 1995). *See Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 739 (9th Cir. 2024). The company had objected that it was not a publisher, but a mere distributor, like a bookstore or a library—"a passive conduit" that cannot be held liable for delivering unlawful content absent knowledge of the illegality. *Stratton Oakmont*, 1995 WL 323710, at *3. The court held otherwise. *Id.* Because the company reviewed user posts and chose not to publish content it deemed offensive, the court held, it was a publisher. *See id.*

Meta does not dispute that Congress enacted Section 230 to overrule this decision—to prevent internet companies from being held liable as publishers for unlawful content posted by their users. And that's exactly what the statute says: Contrary to the decision in *Stratton Oakmont*, internet companies may not be "treat[ed]" as "the publisher" of third-party content. 47 U.S.C. § 230(c)(1). "When a statutory term"—like publisher—"is obviously transplanted from another legal source, it brings the old soil with it." *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019). Here, that "old soil" is the traditional understanding of publisher liability as vicarious liability for the content a company disseminates. *See* Principal Br. 37.

"Unless the statute otherwise dictates," therefore, Section 230 "must" be interpreted to "incorporate" this "well-settled" understanding. *Neder v. United States*, 527 U.S. 1, 22-23 (1999). Nothing in Section 230 even suggests that despite incorporating the common-law concept of publisher liability, Congress intended the

statute to have a broader reach. Section 230 therefore "must" be interpreted to bar imposing traditional publisher liability on internet companies—that is, to bar holding those companies liable for the content they disseminate. *Id.* at 22; *see also George v. McDonough*, 596 U.S. 740, 752 (2022) ("The real question is not what" a statutory term might mean "in the abstract, but what was the prevailing understanding of this term of art under the law that Congress looked to when codifying it.").

The Supreme Court has repeatedly rejected efforts to interpret statutes more broadly than the common-law tradition they rely on. *See, e.g.*, *Neder*, 527 U.S. at 22; *George*, 596 U.S. at 752. And Meta does not identify anything in Section 230 that "dictates" a contrary result. *Neder*, 527 U.S. at 21-22. Indeed, Meta does not dispute any of this except the ultimate conclusion: that Section 230 shields internet companies from liability for their users' content. According to Meta, Section 230 does not just bar common-law publisher liability, it provides internet companies unbounded immunity for anything that could possibly be called publishing activity. Meta does not offer any limit to what counts as a publishing activity. All that can be discerned from its brief is that Meta believes the category includes at least "content-neutral design features" and "activities intended to increase user engagement"—Meta's euphemism for its efforts to induce compulsive use of its social

media platforms. Meta Response Br. 27-28, 36, 41-42. But the company does not offer any evidence in the text or history of Section 230 to support this contention.

Again, it's undisputed that in enacting Section 230, Congress used traditional common-law language to invoke a traditional common-law concept: that publishers are vicariously liable for the content they disseminate. *See Calise*, 103 F.4th at 739; *Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 121-22 & n.11 (4th Cir. 2022). Meta's request for unbounded immunity would unmoor the statute from its common-law roots. *See Calise*, 103 F.4th at 739; *Henderson*, 53 F.4th at 121-22 & n.11. If Congress wanted to do so, it easily could have said so. But this Court may not grant Meta an immunity that Congress chose not to enact.

***Precedent.*** Unable to offer any textual or historical support for its argument, Meta seeks refuge in precedent. But this Court has repeatedly held that Section 230 shields internet companies from liability for the content they disseminate; it does not immunize their "own conduct." *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1093 (9th Cir. 2021); *see* Principal Br. 35-42 (discussing cases). "By its plain terms … § 230(c)(1) cuts off liability *only* when a plaintiff's claim faults the defendant for information provided by third parties." *Lemmon*, 995 F.3d at 1093 (emphasis added). To adopt Meta's contrary interpretation, this panel would have to split from at least six prior cases of

16

this Court.[7] Indeed, in *Calise*, Meta itself made the same argument it makes here: that Section 230 bars any claim that "hinge[s] on publishing-related activity." 103 F.4th at 742. And this Court explicitly rejected it. *Id.*

Rather than seriously grapple with this Court's case law, Meta spends much of its brief repeating that Section 230 shields internet companies from liability that stems from their "status or conduct as a publisher of third-party content." *See, e.g.*, Meta Response Br. 4. But that just raises the question: What does it mean to impose liability on a company "as a publisher of third-party content"? The common-law concept of "publisher" liability incorporated into Section 230 and this Court's precedent both provide the same answer: It means imposing liability for disseminating unlawful content.

Because this Court—and others—have consistently rejected Meta's interpretation of Section 230, Meta resorts to mischaracterizing the case law it relies

---

[7] *See, e.g.*, *Est. of Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1175 (9th Cir. 2024) ("§ 230 protects apps and websites which receive content posted by third-party users (i.e., Facebook, Instagram, Snapchat, LinkedIn, etc.) from liability for any of the content posted on their services."); *Lemmon*, 995 F.3d at 1094 ("CDA immunity is available only to the extent a plaintiff's claim implicates third-party content."); *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 684 (9th Cir. 2019) (holding that Section 230 did not bar ordinance because it imposed "no liability for the content" posted by third parties); *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 850 (9th Cir. 2016) ("[Section 230] protects websites from liability for material posted on the website by someone else."); *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc) ("Section 230 of the CDA immunizes providers of interactive computer services against liability arising from content created by third parties.").

on. For example, the company asserts that "*Dyroff* made clear that Section 230 precludes claims against social media companies for [their] content-neutral tools." Meta Response Br. 25 & n.9. But, as we pointed out in our principal brief (at 49, 51), this Court has explicitly rejected that reading of *Dyroff*. *Lemmon*, 995 F.3d at 1094. Internet companies "continue to face the prospect of liability, even for their neutral tools, so long as plaintiffs' claims do not blame them for the *content* that third parties generate with those tools." *Id.* (emphasis added) ("Snap misunderstands the import of our statement in *Dyroff* that a website's 'tools meant to facilitate the communication and content of others' were 'not content in and of themselves.' 934 F.3d at 1098. For even accepting that statement at face value, … if Snapchat's [publishing tools] were not content for purposes of the CDA, then the [plaintiffs' claims] would rest on no CDA 'content' whatsoever, and Snap would still receive no immunity.").[8]

Similarly, Meta quotes *Bride* for the proposition that Section 230 "is not simply a matter of examining the record to see if a claim … stems from third-party content." Meta Response Br. 28 (quoting *Est. of Bride by & through Bride v. Yolo Techs.*, 112 F.4th 1168, 1178 (9th Cir. 2022)). The company suggests (at 28, 30) that this means that

---

[8] Contrary to Meta's suggestion (at 32), the function of the features in *Lemmon*—a "speed filter" that users could overlay on their posts and "rewards" that the social media company provided users "based on the snaps [posts] they send"—was no different than the function of Meta's features. They were tools that users employed in posting content and that the company employed to "keep its users engaged." *Lemmon*, 995 F.3d at 1088.

Section 230 is not limited to claims that would hold an internet company liable for its users' content. But context makes clear that the Court was saying the opposite: For Section 230 to apply, "it is *not enough* that a claim … stems from third-party content." *Bride*, 112 F.4th at 1176 (quoting *Calise*, 103 F.4th at 742) (emphasis added). The claim must seek to hold an internet company liable for that content. *See id.* at 1175-76. Section 230, the Court explained, "protects apps and websites which receive content posted by third-party users (i.e., Facebook, Instagram, Snapchat, LinkedIn, etc.) from liability for any of *the content* posted on their services." *Id.* at 1175 (emphasis added).

To take just one more example, Meta repeatedly relies on the Fourth Circuit's decision in *Pinckney v. Meta Platforms Inc.*, 127 F.4th 516 (4th Cir. 2025). But that case *rejects* Meta's view of Section 230. There, the Fourth Circuit held that "[a] claim treats the defendant as a publisher or speaker of information … if the claim (1) bases the defendant's liability on the *disseminating* of information to third parties *and* (2) imposes liability *based on the information's improper content*." *Id.* at 524 (quoting *Henderson*, 53 F.4th at 123) (emphasis added). If this Court accepted Meta's argument, it would not be adopting the Fourth Circuit's view; it would be creating a circuit split.

In a last-ditch effort to justify an interpretation that would create both an intra- and inter-circuit split, Meta asserts that this Court must adopt its reading of Section 230 to comply with "immunity doctrine." Meta Response Br. 39-40. Again, Section

230 is not a true immunity from suit. But even if it were, that says nothing about the scope of the immunity. Each immunity is different: Double Jeopardy, for example, is a constitutional immunity that hinges on whether a defendant has been tried twice for the same crime; judicial immunity is an absolute common-law immunity that rests on a defendant's status as a judge; qualified immunity shields government officers only when they act reasonably in the face of law that is not clearly established. Meta cites—and we have found—no authority for the proposition that there is some trans-substantive immunity doctrine that dictates the scope of all immunities, regardless of their source or purpose. Like any other statute, the scope of Section 230, be it a defense to liability or an immunity from suit, must be dictated by its text and history. That text and history make clear that it does not shield internet companies for anything they do that might be called publishing activity; it shields them from liability for disseminating unlawful content.

Finally, Meta complains (at 32-33) that its "behavior … is not unique." And it's right about that: Following Meta's lead, other social media platforms have also designed their platforms to be addictive to children. But Section 230 does not depend on how many social media companies engage in the same misconduct. It depends on whether a plaintiff's claim seeks to hold a company liable for disseminating unlawful content. This Court has never held otherwise.

**2.** **Meta has not demonstrated that it's entitled to the dismissal of allegations about any of the features it claims Section 230 shields.**

Meta's argument that the district court was correct to dismiss allegations about some of its features with respect to some of the plaintiffs' legal theories rests entirely on this Court accepting its interpretation of Section 230—an interpretation the Court has long rejected. And Meta makes almost no effort to explain why Section 230 shields the specific features the district court considered, even under the company's interpretation of Section 230. The only feature that Meta even specifically addresses (at 27) is "ephemeral content," and its only argument on that point is to claim that "publishing third-party content in a manner that encourages reader engagement is a quintessential editorial function." According to Meta, *any* "platform feature[] … designed to maximize user engagement" constitutes "conduct that is identical to publishing." Meta Response Br. 28. But it cites no authority for that proposition.

And it makes no sense. To take just one example: As explained in our principal brief (at 56-57), one of the ways that Meta tries to "maximize the user's engagement" is by sending incessant notifications. If a New York Times sales representative called day and night, it's unlikely that anyone would say that the Times was "publishing" by doing so. Meta has no answer to this—or any of the arguments in our principal brief on these features. Rather than analyze the specific conduct that the district

court held could not be alleged, Meta simply repeats its contention that Section 230 bars any claim based on any publishing activity and reiterates its conclusory assertion that all of the conduct that the district court dismissed constitutes publishing activity. But repeating a claim does not make it so. Even on its own view of Section 230, Meta cannot defend dismissing allegations about these features.

More importantly, Meta's argument depends on accepting its view of Section 230. The company makes no attempt to demonstrate that, if Section 230 only prohibits holding internet companies liable for the content they disseminate, any of its features are protected. Meta briefly mentions a handful of allegations in the plaintiffs' complaints that it says would be foreclosed under this interpretation, but it does not even try to argue that those allegations are necessary to state a claim. Because the company has staked its claim for affirmance on this Court accepting its interpretation of Section 230, and that interpretation cannot be squared with Section 230 or this Court's precedent, the Court should reverse.

## CONCLUSION

This Court should dismiss both appeals for lack of jurisdiction. If it does not, it should affirm the district court's decision not to limit the plaintiffs' failure-to-warn theory at this stage. And it should reverse the district court's dismissal of allegations regarding the following features as to the product-defect theory: notifications,

engagement-based algorithmic feeds, infinite scroll and autoplay, vanishing posts, intermittent rewards, and screentime limits.

Respectfully submitted,

*/s/ Jennifer Bennett*
JENNIFER BENNETT
GUPTA WESSLER LLP
505 Montgomery Street, Suite 625
San Francisco, CA 94111
(415) 573-0336

MATTHEW W.H. WESSLER
MICHAEL SKOCPOL
GUPTA WESSLER LLP
2001 K Street NW
Suite 850 North
Washington, DC 20006
(202) 888-1741

LEXI J. HAZAM
LIEFF CABRASER HEIMANN &
BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
(415) 956-1000

JASON L. LICHTMAN
GABRIEL A. PANEK
LIEFF CABRASER HEIMANN &
BERNSTEIN LLP
250 Hudson Street, 8th Floor
New York, NY 10013
(212) 355-9500

PREVIN WARREN
ABIGAIL BURMAN
MOTLEY RICE LLC
401 9th Street NW, Suite 630

Washington, DC 20004
(202) 232-5504

MATHEW P. JASINSKI
MOTLEY RICE LLC
20 Church Street, 17th Floor
Hartford, CT 06103
(860) 218-2725

ANDRE MURA
GIBBS MURA LLP
1111 Broadway, Suite 2100
Oakland, CA 94607
(510) 350-9717

October 14, 2025

*Counsel for Personal Injury and School District Plaintiffs-Appellees-Cross-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Circuit Rule 28.1-1(c) because this brief contains 5,698 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

October 14, 2025

*/s/ Jennifer Bennett*
Jennifer Bennett